ISAAC G. WILLIAMSON *vs.* ANDREW LACY.

Lincoln.    Opinion December 5, 1893.

*Immunity of judicial officers.    Public Trials.    Trial Justice.*

Trials in court, as a rule, must be public.    It is a public rather than an individual right to have proceedings in court conducted with open doors.    In criminal cases the accused cannot be deprived of the presence of his friends. Judges have a discretion to be exercised in regulating the number and kind of spectators at criminal trials, but not an unlimited discretion.

A trial justice exercises his discretionary power erroneously who causes to be ejected from his court room during a criminal examination all persons but parties and their witnesses, including in the number many leading and influential citizens in attendance as spectators, when the only justification for

their exclusion is that the trial was to be upon an accusation of adultery in the presence of several female witnesses.

A judge of a court of record is not liable at common law for any act done by him as judge while acting within his jurisdiction, and no action lies against him therefor, whatever may be the act or his motive for it. The protection is absolute upon grounds of public policy.

The same public policy also affords a great degree of protection, although not absolute protection, to magistrates whose courts are not by the common law courts of record. All reasonable presumptions are allowed in their favor.

A trial justice is not personally liable for an injury to another which is the result of an honest error of judgment on his part, when he has jurisdiction in the case and the act done is not of a strictly ministerial character.

Where a trial justice, or other inferior magistrate, does an act unreasonably and arbitrarily, or from malicious motives, which causes an injury to another, he may be sued for the consequences of his wrongful act by the person thus injured. But it must be the case of a direct injury or indignity to the individual, and not merely an offense or wrong against the public generally.

ON REPORT.

The case appears in the opinion.

This was an action of trespass against the defendant, a trial justice for the county of Lincoln, on the ground that the plaintiff, who was a spectator at a trial before the justice was, with other spectators, ordered from the court-room and finally removed by an officer under the direction of the court, but without the use of force.

Plea, general issue, and a brief statement of special matter of defense that said defendant, deeming it wise in the interests of justice and the proper and orderly conduct of the trial that all spectators should be excluded from the trial, and the same be conducted in the presence of the parties and witnesses only, requested said plaintiff to depart from said room, which the plaintiff wholly refused to do, but continued therein in contempt of the defendant as trial justice aforesaid, and to the disturbance and violation of good order and decency in the administration of justice and to the great hindrance thereof; and thereupon said defendant as trial justice aforesaid requested an officer of said court, to remove said plaintiff from said room, and said officer thereupon gently laid his hands upon the plaintiff and led him therefrom, using no more force in so doing than was necessary, proper and legal.

*W. E. Hogan*, for plaintiff.

Counsel cited: *Sikes* v. *Johnson*, 16 Mass. 389; *Brown* v. *Perkins*, 1 Allen, 89; *Woodbridge* v. *Conner*, 49 Maine, 353. No court in this State has the power or authority to expel a spectator, who is present, conducting himself quietly, from the court-room.

*Baker, Baker and Cornish*, for defendant.

There is a distinction taken by some of the courts between the power of an inferior tribunal not of record to punish for contempt and its power to remove from the court-room any person whose conduct or presence is prejudicial to the administration of justice. Many cases hold that inferior courts, though not of record, have power even to punish for contempt, and to restrain all disorders or the conduct or presence of any person prejudicial to the interests of justice, according to the sound discretion of the magistrate. *Clark* v. *People*, Breese, 340 (12 Am. Dec. 180, 181 and notes); *State* v. *Woodfin*, 5 Ired. Law, 199 (42 Am. Dec. 161, note); *Neel* v. *State*, 9 Ark. 259 (50 Am. Dec. 209 and note); *Ex Parte Adams*, 25 Miss. 883 (59 Am. Dec. 234, notes); *In re Monroe*, 46 Fed. Rep. 52.

But even where the power of inferior courts to commit for contempt is denied, their authority is fully recognized to remove from the court-room any persons whose conduct or presence is prejudicial to the administration of justice; and this, if done in the exercise of sound judicial discretion, would seem to be conclusive, and is a defense to trespass. *Rhinehart* v. *Lance*, 43 N. J. Law; 25 Albany Law Journal, 49, 52. Counsel also cited: *Garnet* v. *Ferrand*, 6 B. & C. 611; *State* v. *Copp*, 15 N. H. 212.

Sitting: PETERS, C. J., WALTON, EMERY, HASKELL, WHITEHOUSE, JJ.

PETERS, C. J. It is an undeniable proposition, to start with in this discussion, that courts of justice should be open to the public. That is the rule. History brings to us too vivid pictures of the oppressions endured by our English ancestors at

the hands of arbitrary courts ever to satisfy the people of this country with courts whose doors are closed against them. They instinctively believe that it is their right to witness judicial trials and proceedings in the courts.

It is true that courts have discretionary powers to be exercised in such a matter,— but not an unlimited discretion. The almost boundless authority exercised by the court of Star Chamber in England was the seed of its own destruction, and was its historical infamy. Its lessons are not lost on the courts of to-day. We never knew of any court of general jurisdiction in this State conducting a strictly private criminal trial, nor, before this, of such a trial before a common magistrate. The defendant testifies that he never before held a private court during his eighteen years' experience as a magistrate.

Mr. Cooley, in his book on Constitutional Limitations, p. 312, remarks on the general subject as follows:

"It is also requisite that the trial be *public*. By this is not meant that every person who sees fit shall in all cases be permitted to attend criminal trials; because there are many cases where, from the character of the charge and the nature of the evidence by which it is to be supported, the motives to attend the trial on the part of portions of the community would be of the worst character, and where a regard to public morals and public decency would require that at least the young be excluded from hearing and witnessing the evidences of human depravity which the trial must necessarily bring to light. The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions; and the requirement is fairly met with if, without partiality or favoritism, a reasonable proportion of the public is suffered to attend, notwithstanding that those persons whose presence could be of no service to the accused, and who would be drawn thither by a prurient curiosity, are excluded altogether."

We cannot doubt that it was an unwise exercise of discretion

for the defendant to expel forcibly from his court-room on the occasion in question all persons but the parties and witnesses. The accused persons had no witnesses, and they were left without the presence of friends. There was room enough for all the spectators to be seated without the discomfort of any one. There was no inclination on the part of anyone to create a disturbance, nor was any such state of things apprehended. The magistrate testifies that his order was not based on any such ground, and he declined as a witness to specify any reason for the order, further than to say that he acted upon his judgment that the demands of justice required it. It appears that one of the prisoners who were to be tried was complained of for adultery, and that he and his wife were complained of for an affray; and the cases were tried separately and privately. The complainant in the two cases, whose daughter was to be a witness, requested private trials, but the magistrate does not admit that her request influenced him at all, although he states that there were to be five female witnesses at the trials. The prisoners were committed to jail for want of bail, where they remained many months until the grand jury met, which found a bill that was abandoned without a trial.

It is better for the public interest that such trials be conducted in the presence of a responsible portion of the community. Public trials have a tendency to prevent waste of the public money. The persons ejected from the court-room were among the principal citizens of the county, comprising leading members of the bar, county commissioners, clerk of the courts, county treasurer and others of the highest respectability in that community. It is idle to charge against such a body of men that they crowded the court-room for any unjustifiable purpose. Much more decorous would it be to conceive that they distrusted the propriety of the prosecutions, and were present because they were interested in the orderly and economical administration of justice. Apparently some of them were present because they were acquaintances and friends of the accused. They were gentlemen capable of being good judges of their own conduct.

There is a lack of particular authority on the questions arising in this case, for the reason that so few private trials have anywhere been held. *State* v. *Copp*, 15 N. H., 212, is cited by the defense. There a person was removed from a court-room because he offensively insisted in keeping a seat so near to the magistrate as to personally embarrass him in the performance of his duties. And the court there remarks : "But the law does not authorize any court to act arbitrarily, and unreasonably exclude persons, but the right to have the courts open is the right of the people and not of the individual." It would seem that in the case at bar the public right was well represented by the numerous personages who sought to be present in court.

*Garnet* v. *Ferrand*, 6 B. & C., 611, the other case cited by the defense, was a case where a person unreasonably and obnoxiously intruded himself before a coroner's inquest held upon the body of a deceased person of no interest personally to the intruder. That case went upon the ground that a coroner's court in England is a court of record, and of high privilege, and that no action is maintainable against any coroner for an act done by him when sitting in a judicial capacity and acting within his jurisdiction.

But the more practical question in the present case is as to the rule of the liability of judges who commit errors in the proceedings in their courts injuriously affecting other persons. It is universally admitted that a judge of a court of record is not liable at common law for any act he does as judge, while acting within his jurisdiction. No action lies against him, whatever his act or the motive for the act may be.

The same policy of the law which affords such absolute protection to the judges of the higher courts for their acts, also affords a very great immunity to those who administer justice in courts that are of a lesser grade than strictly courts of record· The same policy prevails in either case, affording in the one instance a complete protection against a liability to private action, and in the other a reasonable though partial protection.

Lord Tenterden, in the case of *Garnet* v. *Ferrand*, *ante*, hits the subject with these observations :

"This freedom from action and question at the suit of an individual is given by the law to the judges, not so much for their own sake as for the sake of the public, and for the advancement of justice, that being free from actions they may be free in thought and independent in judgment, as all who are to administer justice ought to be. And it is not to be supposed beforehand that those who are selected for the administration of justice will make an ill use of the authority vested in them. Even inferior justices, and those not of record, cannot be called in question for an error in judgment, so long as they act within the bounds of their jurisdiction. In the imperfection of human nature, it is better, even, that an individual should occasionally suffer a wrong, than that the general course of justice should be impeded and fettered by constant and perpetual restraints and apprehensions on the part of those who are to administer it. Corruption is quite another matter; so also, are neglect of duty and misconduct in it. For these, I trust, there is and will always be some due course of punishment by public prosecution."

The general rule of liability, therefore, of a judge of a court not of record, as deducible from the authorities, is that a judge of such a court is not liable personally for any injury sustained by anyone which is the result of honest error of judgment, in a matter where the court has jurisdiction, and where the act done is not of a purely ministerial character. See on this subject a collection of cases and the discussion of them in 15 Amer. Law Rev. 427.

If an inferior magistrate, however, acts unreasonably and arbitrarily, or from malicious motives, and thereby inflicts an injury upon a person he may be liable in an action therefor. But it must be a case of direct injury or indignity to the individual.

We cannot with any certainty decide, from the facts before us, that the defendant did not act from honest motive and according to his best judgment. He seems to have been in some degree influenced by suggestions from the officer in attendance upon his court, and in all probability he actually believed, however mistakenly, that the delicacy of the situation would justify the proceedings with closed doors.

*Plaintiff nonsuit.*