## B. M. WEBB *v.* T. J. FISHER.*

### (*Nashville.*   December Term, 1902.)

**1.  JUDGES.  Not liable in damages for corrupt, malicious, wicked and oppressive judicial acts.**

A civil action for damages will not lie against a judge of a court of superior and general jurisdiction, as a chancellor holding the chancery court, for his judicial acts in pronouncing and entering a decree, such as a decree of disbarment against plaintiff as an attorney and solicitor, even though it be alleged in the declaration that such acts were done corruptly, maliciously, wickedly and oppressively. (*Post, pp.* 702-710.)

Cases cited and approved:  Randall *v.* Brigham, 7 Wall., 523; Bradley *v.* Fisher, 13 Wall., 335; Scott *v.* Stansfield, 3 L. R. Exch., 220; Philbrook *v.* Newman (C. C.), 85 Fed. Rep., 139; Williamson *v.* Lacy, 86 Me., 80.

Cases cited, distinguished and approved:  Hoggatt *v.* Bigley, 6 Hum., 237; Cope *v.* Ramsey, 2 Heisk., 197.

**2.  SAME.  This rule is founded upon considerations of public policy.**

The judge performs his duty to the public by doing justice between individual litigants, and the rule exempting him from liability to civil suit for his judicial acts is founded upon the weightiest considerations of public policy.  If his motives could be challenged and inquired into by civil action, he would be at the mercy of unsuccessful and disappointed suitors who could always allege malicious or corrupt motives, thereby subjecting him to harassing and vexatious litigation, occupying his mind and time with the defense of

---

*As to personal liability of judge for judicial acts, see note to Austin *v.* Vrooman (N. Y.), 14 L. R. A., 138.

his own interests, lowering the dignity of the high office which he holds in trust for the public weal and trammeling his independence, so essential to a pure and impartial administration of justice. Therefore, as said by Lord Tenterden: "In the imperfection of human nature it is better even that an individual should suffer a wrong than that the general courts of justice should be impeded and fettered by constant and perpetual restraints and apprehensions on the part of those who administer it." (*Post, pp.* 709-710.)

FROM DEKALB.

Appeal in error from Circuit Court of DeKalb County. Jos. C. HIGGINS, Judge.

WEBB and CANTRELL, for Webb.

WADE and ROBINSON, for Fisher.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The question presented upon this record is in respect of the liability of a judicial officer for certain official acts which are alleged to have been done oppressively, maliciously and corruptly. The more specific allegations of the declaration are that the defendant, T. J. Fisher, as chancellor of the fifth chancery division of Tennessee, decided against plaintiff the cause of W. H. Cummings, relator, against B. M. Webb, in the chancery court at Smithville, Tenn., in which a decree of disbarment was made and en-

tered against plaintiff, a practicing attorney and counsel and solicitor in the courts of said State, and that said decree was pronounced corruptly, maliciously, wickedly and oppressively. There are other allegations in the declaration, which are not necessary to be mentioned, since the statement already made presents the real case as made, stripped of useless verbiage and immaterial recitals.

To this declaration defendant filed a plea of not guilty.

At the July term, 1902, defendant asked leave of the court to withdraw his plea and file a demurrer to the declaration, assigning for cause the exemption of a judicial officer from such a suit; but this motion was disallowed.

At the November term, 1902, the presiding judge, Hon Joseph C. Higgins, being of opinion that the declaration stated no cause of action, dismissed the suit.

Plaintiff appealed, and has assigned errors.

The precise question with which we are now confronted has not heretofore been decided in this State, so far as we are advised by any reported opinion.

The case of *Hoggatt* v. *Bigley,* 6 Humph., 237, involved the liability of a justice of the peace for acts done in his official capacity. Judge Green, in delivering the opinion of the court, said: "The only question is whether the justice of the peace had jurisdiction of the case against the slave, Jim, whom he

committed to prison; for it is not contended that a judicial officer is responsible for mere errors of judgment in a case of which he has jurisdiction, and in which, without malice, he honestly pronounces what he believes to be the judgment of the law." It was not contended in that case that the official act was done maliciously or corruptly, but the contrary appeared.

The case of *Cope* v. *Ramsey,* 2 Heisk., 197, was a bill filed by the next friend of a minor against the defendants, as justices of Warren county, to hold them personally liable for a sum of money paid into the hands of the clerk of said court in Confederate money. The bill charged that all the parties defendant combined and confederated together to cheat and defraud said minor in this transaction; but the court found there was no proof to throw suspicion on the defendants. A demurrer was incorporated in the answer, which assigned that defendants were not responsible for acts done in a judicial capacity, and that the bill failed to charge that said acts were done with a corrupt, malicious or fraudulent purpose. Judge Sneed said: "If they [the justices], in the rendition of the order complained of, have done the complainants wrong by an honest error of judgment, they are not responsible for it, pecuniarily or otherwise. But," continues the court, "if they have acted corruptly, maliciously, and with purpose to defraud the complainant of his rights, then in an appropriate pro-

ceeding they are responsible. The bill does not make out such a case. It does not impute to these justices any corrupt or dishonest motive touching this judicial act, and the bill is therefore demurrable.

It will be observed that the rule announced in the two cases last cited related to the official liability of justices of the peace, who are held exempt when the act is within the justices' jurisdiction, unless it is inspired by motives of malice and corruption.

But with respect to courts of superior and general jurisdiction a different rule has long obtained.

It was thus announced in *Randall* v. *Brigham,* 7 Wall., 523 (19 L. Ed., 285), viz.: "Now, it is a general principle, applicable to all judicial officers, that they were not liable to a civil action for any judicial act done by them within their jurisdiction; that with reference to judges of limited and inferior authority it had been held that they were protected only when they acted within their jurisdiction; that, if this be the case with respect to them, no such limitation exists with respect to judges of superior or general authority; that they were not liable in civil actions for their judicial acts, even when such acts were in excess of their jurisdiction, unless, perhaps, when the acts in excess of jurisdiction are done maliciously or corruptly."

But in the case of *Bradley* v. *Fisher,* 13 Wall., 335 (20 L. Ed., 646), it was held that the qualifying words were incorrect, and that judges of courts of superior

or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. "A distinction," said the court, "must be observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. Where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority; and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much question for his determination as any other question involved in the case, although upon the correctness of his determination in these particulars the validity of his judgment may depend."

It was further stated in that case, viz.: "The exemption of judges of the superior courts of record from liability to civil suit for their judicial acts existing when there is jurisdiction of the subject-matter, though irregularity and error attend the exercise of the jurisdiction, can not be affected by any consideration of the motives with which the acts are done. The allegation of malicious or corrupt motives could always be made, and, if the motives could be inquired into, judges would be subjected to the same vexa-

Webb v. Fisher.

tious litigation upon such allegations, whether the motives had or had not any real existence. Against the consequences of their erroneous or irregular action, from whatever motives proceeding, the law has provided for private parties numerous remedies, and to those remedies they must in such cases resort. But for malice or corruption, in their action, whilst exercising their judicial functions within the general scope of their jurisdiction, the judges of these courts can only be reached by public prosecutions in the form of impeachment, or in such other form as may be specifically prescribed.

In this country the judges of the superior courts of record are only responsible to the people, or the authorities constituted by the people, from whom they receive their commissions, for the manner in which they discharge the great trusts of their office. If, in the exercise of the powers with which they are clothed as ministers of justice, they act with partiality, or maliciously, or corruptly, or arbitrarily, or oppressively, they may be called to an account by impeachment, or suspended or removed from office. In some States they may be thus suspended or removed without impeachment by a vote of the two houses of the legislature."

As said in *Scott* v. *Stansfield,* 3 L. R. Exch., 220: "This provision of the law is not made for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that

the judges should be at liberty to exercise their functions with independence and without fear of consequences." *Philbrook* v. *Newman* (C. C.), 85 Fed., 139.

In the Am. & Eng. Ency. Law (2d Ed.), vol. 17, p. 728, it is said, viz.: "The rule is well established that judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even where such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly;" citing numerous cases. The only cases cited as holding a contrary doctrine are several cases from Kentucky and two cases from Tennessee. The latter, as we have already seen, lay down the rule with respect to the liability of justices of the peace, namely, *Cope* v. *Ramsey*, 2 Heisk., 197; *Hoggatt* v. *Bigley*, 6 Humph., 237.

A reason for a different rule with respect to the liability of justices of the peace may be found in the fact that under our constitution they are not liable for crimes and misdemeanors in office, or removal from office for cause by a two-thirds vote of the general assembly. They are made liable to indictment and removal from office by the court upon conviction. Article 5, sec. 5, Const. 1870; Const. 1834, art. 5, sec. 5.

The rule exempting judges from liability for judicial acts is based upon the consideration that the judge represents the public. If, says Mr. Cooley, the duty which the official authority imposes upon an offi-

cer is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, must be a public, and not an individual, injury, and must be redressed, if at all, in some form of public prosecution. The duty is public, and the end to be accomplished is public. The individual loss results from the proper or improper and imperfect performance of a duty, for which his controversy is only the occasion. The judge performs his duty to the public by doing justice between individuals, or, if he fails to do justice between individuals, he may be called to account by the State in such form and before such tribunal as the law may have provided. But, as the duty neglected is not a duty to the individual, civil redress, as for a civil injury, is not admissible. This is only one reason for judicial exemption from individual suits. Cooley on Torts, 380, 381.

The necessary result of the liability would be to occupy the judge's mind and time with the defense of his own interests. The effect would be to lower the dignity of the court. Said Lord Tenterden, viz.: "In the imperfection of human nature it is better even that an individual should suffer a wrong than that the general courts of justice should be impeded and fettered by constant and perpetual restraints and apprehensions on the part of those who administer it." Quoted in *Williamson* v. *Lacy,* 86 Me., 80 (29 Atl., 943; 25 L. R. A., 506).

These principles we believe to be sound, and apply in the present instance.

The result is the judgment below is affirmed.

NOTE.—The decree of disbarment was reversed by the court of chancery appeals on the facts, and Mr. Webb reinstated as an attorney.