JOHN J. KOVACK
d/b/a JOHNNIE'S GRILL
*vs.*
LICENSING BOARD,
CITY OF WATERVILLE

Kennebec.   Opinion, August 24, 1961.

*Burton G. Shiro*, for plaintiff.

*Philip S. Bird,*
*John Jabar*, for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, DUBORD, SIDDALL, JJ.

TAPLEY, J. On exceptions. In May of 1958 John J. Kovak, the appellant, was issued a victualer's license by the Licensing Board of the City of Waterville for the premises known as and called "Johnnie's Grill." On October 16, 1958 the mayor of Waterville notified Mr. Kovack by letter that a hearing would be held in the Council Rooms of the City Hall on October 21, 1958 at 7:30 P. M. "relative to the possibility of revoking the Victualer's License of Johnnie's Grill, 28½ Ticonic Street." The appellant received the letter in due course, appeared with counsel at the hearing and participated therein. The Licensing Board as a result of the hearing revoked the appellant's victualer's license and from this revocation the appellant appealed to the Superior Court, within and for the County of Kennebec and State of Maine. A hearing was held on the appeal before a single Justice of the Superior Court. At this hearing there was no court stenographer present and, therefore, this court does not have before it a record of the testimony adduced at the hearing. There was introduced at the hearing the letter from the mayor to Mr. Kovack notifying him of the hearing. This letter constitutes the only evidence before us. The presiding Justice, after hearing the appeal, properly refused to rule on the constitutionality of the statute involved in the case and further determined that although the notice received by Mr. Kovack was legally insufficient, he waived this fact by appearing in person with counsel and actively participating in the hearing.

The involved statute is Sec. 51 of Chap. 100, R. S., 1954, and that portion which is pertinent to these proceedings reads:

*"License revoked or suspended; hearing; appeal.—* A license issued under the provisions of sections 29 to 54, inclusive, may be revoked if at any time the licensing authority shall be satisfied that the licensee is unfit to hold the license. It shall also

have the right to suspend and make inoperative for such period of time as it may deem proper for all the aforesaid licenses mentioned herein for any cause deemed satisfactory to it. The revocation and suspension shall not be made until after investigation and hearing, nor until the licensee shall have been given opportunity to hear the evidence in support of the charge against him and to cross-examine, by himself or through counsel, the witnesses, nor until the licensee shall have been given an opportunity to be heard. Notice of hearing shall be served on the licensee or left at the premises of the licensee not less than 3 days before the time set for the hearing. The licensing authority, as designated in sections 29 to 54, inclusive, is specifically charged with the duty of enforcing the provisions therein and of prosecuting all offenders against the same.——."

The appellant takes the position, and so argues, that Sec. 51 is unconstitutional, in that it is an improper delegation of legislative power because it grants to the licensing authority an arbitrary discretion when it provides that a license, "may be revoked if at any time the licensing authority shall be satisfied that the licensee is unfit to hold the license." Appellant complains that the Legislature has failed to provide a guide or standard by which satisfaction of unfitness may be measured.

The presiding Justice found,

"The evidence produced before this Court amply justifies the Board's finding the appellant licensee 'is unfit to hold the license.' - - - - -

"We find as a fact, during the period appellant's license was in effect, he did (a) permit gambling upon his premises, (b) serve intoxicating liquor (beer) to a minor, and (c) permit intoxicated and disorderly persons to remain upon his premises."

Appellant's third exception attacks the presiding Justice's ruling that the appellant permitted gambling upon

the premises, served intoxicating liquor to a minor and permitted intoxicated and disorderly persons to remain upon his premises. This third exception we cannot consider as the case was tried below without benefit of a court reporter so that there is not before us a transcript of the testimony upon which to determine the question of error on the part of the presiding Justice in the ruling complained of. The only evidence before us is documentary in the form of the letter from Mayor Bernier to the appellant notifying him of the hearing. The factual findings of the presiding Justice are accepted as such by this court for the purpose of review.

The Licensing Board of the City of Waterville is an administrative body statutory created and with such power and authority as the Legislature has legally and properly endowed it. Its authority is no less nor more than the legislative body has given it. The Board is clothed with the administrative power of revoking a license when it "shall be satisfied that the licensee is unfit to hold the license." Appellant contends that the Legislature has failed to establish a guide or standard to be applied for the purpose of determining whether a licensee is fit or unfit to be the holder of a license and because of this alleged failure, the statute is unconstitutional. Sec. 51 is procedural in its nature and was enacted for the purpose of administering the laws pertaining to the licensing of innkeepers, victualers and the operators of lodging houses.

> "*Sec. 33. Duties of victualers.*—Every victualer has all the rights and privileges and is subject to all the duties and obligations of an innkeeper, except furnishing lodging for travelers."

Sec. 34 provides:

> "*Innkeepers and victualers to allow no gambling.* —No innkeeper or victualer shall have or keep for gambling purposes about his house, shop or other

buildings, yards, gardens or dependencies, any dice, cards, bowls, billiards, quoits or other implements used in gambling; or suffer any person resorting thither to use or exercise for gambling purposes any of said games or any other unlawful game or sport therein; and every person, who uses or exercises any such game or sport for gambling purposes in any place herein prohibited, forfeits $5."

Under Sec. 35 there is provided:

"No innkeeper or victualer shall suffer any reveling or riotous or disorderly conduct in his house, shop or other dependencies; nor any drunkenness or excess therein."

Under Secs. 34 and 35 the Legislature has prohibited a victualer from keeping for gambling purposes implements on the premises, permitting the use of them for gambling purposes or suffering any reveling, riotous or disorderly conduct or any drunkenness on the premises. Thus the Legislature has defined certain prohibitions applicable to licensees.

A victualer has no natural right to operate his business, as by statute it is a privilege which may or may not be conferred by public authority. *Inhabitants of Dexter* vs. *Blackden,* 93 Me. 473.

"The permission to conduct an inn is not granted to all who may apply for a license; it is not a right to be exercised by one at will, but a privilege to be exercised when granted by municipal officers." *Goodwin* vs. *Nedjip, et als.,* 117 Me. 339, at page 342.

Where the Legislature accords the privilege of license, it naturally follows that it provides procedure for revocation or suspension of the license when the licensee fails to conduct his business in accordance with legislative standards or administrative rules and regulations. In the instant

case the Legislature has empowered the Licensing Board to revoke a victualer's license when it is "satisfied that the licensee is unfit to hold the license." The Licensing Board is called upon to make a determination as to the fitness or unfitness of a licensee to hold his license. Administrative bodies are functionally necessary in the process of government. There must be that delegation of power sufficient to the end that a proper, just the legal administration may occur. In considering delegation of power from the viewpoint of constitutionality, it is important that there exists in the statute adequate procedural safeguards. In considering the delegation of legislative power to administrative bodies, Rhyne's Municipal Law, on page 655, states:

> "It is generally held that statutes and ordinances which do not prescribe reasonable standards for the guidance of the officer or body are unconstitutional as attempts to delegate legislative power to administrative officials. However administrative officials may be given authority to ascertain the existence of facts to which a legislative policy is applicable, and generally have absolute discretion to grant or refuse licenses for businesses which are inherently illegal. Legislative standards governing the issuance and denial of licenses were held adequately prescribed where officials were authorized to grant licenses to achieve compliance with all laws, ordinances, rules and regulations, or public health laws, or to license safe and proper places of business, persons of good character and reputation, *fit and proper persons*, applicants found to be physically fit, or persons worthy of assistance." (Emphasis supplied).

It is apparent that the members of an administrative body must exercise their judgment in adjudicating a question of fact as to whether a person is of good character and reputation, a fit or proper person, or one who is physically fit. The Legislature sets the standard in these instances

and authorizes the Board to determine that the standard has been satisfied. There are many instances in the Maine Statutes where the Legislature has delegated to an administrative body authority to use its discretion and judgment. For example, in the abandonment of property or a service of a public utility, the utility is required to obtain the approval of the Public Utilities Commission and,

> "In granting its approval, the commission may impose such terms, conditions or requirements *as in its judgment are necessary to protect the public interests.*" (Emphasis supplied). Chap. 44, Sec. 48.

See *Maine Central Railroad Company* vs. *Public Utilities Commission,* 156 Me. 284. Sec. 55 (Chap. 44) prescribes the process of complaining against the public utility if its rates, tolls, charges, etc. are unjustly discriminatory and unreasonable. The Public Utilities Commission under Sec. 58 (Chap. 44) has delegated authority "to fix and order substituted therefor such rate or rates, tolls, charges or schedules as shall be *just or reasonable.*" (Emphasis supplied). Secs. 19 to 33 inclusive, of Chap. 48 are designed to regulate motor trucks for hire. The Public Utilities Commission is authorized to issue a certificate of public convenience and necessity *if in its judgment* public convenience and necessity require such operation. Concerning contract carriers, the Legislature under Sec. 23, sub-sec. III directs the Commission to issue no permit "unless it appears that the applicant is *fit, willing and able properly to perform the service of a contract carrier by motor vehicle* - - - - -." (Emphasis supplied). This direction places upon the Commission the burden of affirmatively determining that the applicant is "fit, willing and able to perform." The standard is established but the determination of the requirement is left to the judgment of the Commission in finding the fact. See *Richer re Contract Carrier Permit,* 156 Me. 178.

A case in point is *Sate* vs. *Vachon*, 101 A. (2nd) 509-513 (Conn.). This case involves the licensing of a nursing home. It is contended that there was an illegal and unconstitutional delegation of legislative power to an administrative board because of lack of a legislative standard for guidance. The pertinent statutory law reads: "The public welfare council may license any *suitable person* to maintain a home - - - -." (Emphasis supplied). The Court stated:

> "The act provides the standard for the age of the persons to be cared for, states the minimum number of persons to be housed before the act becomes obligatory and requires that the persons licensed be a 'suitable person.' The words 'suitable person' have a definite meaning in our law, and their use in the act furnishes a standard by which the public welfare council must be guided."

The language used in *Locke's Appeal*, 72 Pa. 491, at page 498, clearly and succinctly demonstrates the principle applicable to the case at bar, that an administrative body may be delegated power to determine questions of fact to further governmental procedure.

> "The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this would be to stop the wheels of government. There are many things upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject of inquiry and determination outside of the halls of legislation."

> "As compared to a delegation of authority to regulate businesses generally, the legislature may be less restricted when it seeks to delegate authority of a legislative nature to an administrative body created for a particular purpose, such as the care of public health. So it has been held that specific

rules of action need not be prescribed where administrative officers are granted discretion relating to the administration of police regulations and necessary to protect the public morals, health, safety, and general welfare or requiring consideration of personal fitness." 73 C. J. S., Public Administrative Bodies and Procedure, Sec. 30, Page 329.

See 39 A. L. R. (2nd), Anno., Sec. 14, Page 622. Also reference is made to 45 A. L. R. (2nd), Anno, Sec. 7B, Page 1408. In considering legislative delegation of authority, it is important to analyze Sec. 51 in view of the provisions of Secs. 29 to 54 for the purpose of shedding light upon legislative intent as to victualers' licenses, their issuance, suspension and revocation. According to the statute, a victualer licensee is deemed to be in the same category as that of an innkeeper, having the same rights and privileges and subject to all the duties and obligations, with the exception of furnishing lodging to travelers. The business of a victualer is regulated for the benefit of the public and must be maintained under supervision. The supervising authority is the "licensing board." The licensing board is authorized to grant the privilege of a victualer's license "to persons of good moral character, and under such restrictions and regulations as they deem necessary—." The statute expressly prohibits a victualer from permitting gambling, reveling, riotous or disorderly conduct or any drunkenness on the licensed premises. In the event the licensing authority shall be satisfied that the licensee is unfit to hold the license, then it may revoke the license. The facts of the instant case stand undisputed, that the licensee did permit gambling on his premises, did serve intoxicating liquor (beer) to a minor and did allow intoxicated and disorderly persons to remain upon his premises. On the basis of these facts satisfaction on the part of the licensing authority, that the licensee is unfit to hold the license, is warranted.

The Legislature, in the enactment of Secs. 29, 33, 34, 35, and particularly Sec. 51 which is under attack as to its constitutionality, provides sufficient standards to guide the administrative body in its discretionary functions. There are ample safeguards preventing the licensing board from using and exerting arbitrary power, especially in view of the fact that procedural provisions are adequate and judicial review is available to the end that the appellant is not deprived of due process of law.

The appellant fails in his attempt to prove that Sec. 51 is unconstitutional. We are of the opinion, and so declare, that Sec. 51 of Chap. 100, R. S., 1954, is constitutional.

The appellant, by exceptions, complains that he did not receive a legally sufficient notice of the hearing. As to notice, Sec. 51 provides "Notice of hearing shall be served on the licensee or left at the premises of the licensee not less than 3 days before the time set for the hearing." The notice was sent by mail. It was dated October 16, 1958 and notified the appellant of a public hearing assigned for October 21, 1958. He appeared personally and with counsel at the hearing in which he and his counsel actively participated. He contends that the notice was legally defective, insufficient in law and, therefore, did not confer jurisdiction over his person. He further argues that his appearance and active participation in the hearing did not waive the invalid notice.

Whatever rights the appellant may have had on the grounds of inadequacy of notice were waived by his appearance and participation in the hearing. A case directly in point involving a statute, in substance, the same as the pertinent part of Sec. 51 is *Manchester* vs. *Selectmen of Nantucket*, 335 Mass. 156. In the Manchester case, the petitioner (Manchester) received a written notice of a hearing "on complaints received by the Board as regards your operation of the premises known as 'Nantucket New

Ocean House.' " The Board held a hearing previous to which the petitioner filed written objection with the Board, then withdrew and took no part in the hearing. The objection, in substance, related to insufficiency of notice as a matter of law under the statute, and further, that in its terms it was vague and indefinite and contained no charges which would warrant action under the statute. Justice Spalding, for the Court, said on page 159:

"We are of opinion, as the petitioner argues, that the notice sent by the respondents failed to inform the petitioner with sufficient particularity of the charges she would be called upon to meet; it told her only that she would be given a hearing at a designated time and place 'on complaints received by the Board as regards your operation of the premises known as "Nantucket New Ocean House." ' While such notices are not to be tested by the standards applicable to a criminal pleading (see Higgins v. License Commissioners of Quincy, 308 Mass. 142, 145), fairness requires more than was contained in the notice here. The petitioner, however, by filing an objection to the notice and not taking part in the hearing could not thereby deprive the respondents of jurisdiction to proceed with the hearing and render a decision. The petitioner should have asked for additional information concerning the charges that she was to meet; and if upon obtaining such information she needed further time in which to prepare her case she could have asked for a postponement. See Davis, Administrative Law, 279-280. If these requests had been denied a very different question would be presented. The petitioner, however, did none of these things. We are of opinion that in these circumstances she is in no position to challenge the suspension of her license."

See 42 Am. Jur. Pub. Administrative Law, Sec. 119.

Appearance in person and by attorney at the hearing amounts to a waiver of any irregularity or imperfection

in the service of notice. *Keeling, et al.* v. *Board of Zoning Appeals of City of Indianapolis, et al.* (Ind.) 69 N. E. (2nd) 613.

One who appears in an administrative proceeding without the notice to which he is entitled by law has no grounds to complain of lack of notice. *DeLuca, Pet., Aplt.* v. *Board of Supervisors of Los Angeles County, et al.* (Cal.) 285 P (2nd) 43.

In any administrative proceedings a person is entitled, as a matter of right, to such procedural processes as will satisfy the demands of due process. Failing to meet the requirements of due process and applicable statutory procedural rules, the administrative agency does not obtain jurisdiction over the person, and any judgments rendered under these circumstances are nullities. The procedure in effecting notice must be in compliance with statutory provisions and in accordance with the principles of due process. In the instant case, Sec. 51 provides that revocation and suspension of a license shall not be made until (1) after investigation and hearing; (2) the licensee has had opportunity to hear the evidence in support of the charges against him; (3) right of cross-examination, and (4) an opportunity to be heard. The only provision for notice of hearing is that such notice shall be "served on the licensee or left at the premises of the licensee not less than 3 days before the time set for the hearing." The section mentions charges against him but is silent as to any statutory provisions requiring the Board to give notice of the charges. The notice of the hearing was woefully inadequate in that it did not advise the appellant of the charges against him. It is not necessary that the charges be pleaded with the niceties required by criminal pleadings—it will suffice if they are described with reasonable certainty in order that he may prepare his defense and not be taken by surprise at the hearing. Not only due

process, but fairness, require adequacy of notice. The functions of administrative bodies are a vital part of government and their authority over the rights and privileges of the individual is of such importance and their decisions so far reaching that they must be careful to observe the prescribed procedures in bringing a matter to hearing. Notice is the basic approval to an administrative hearing. The necessity of a notice complying with the requirements of statute and due process is of extreme importance and should not be lightly considered or disregarded. In many instances the jurisdiction of the administrative body to hear and adjudicate depends on adequacy of notice.

In the case at bar the appellant, by appearing at the hearing and participating therein, submitted himself to the jurisdiction of the Board and thereby cured an inadequate and legally insufficient notice.

*Exceptions overruled.*