**J. Philip RICHARDS**

v.

**Robert W. ELLIS et al.**

Supreme Judicial Court of Maine.

Sept. 6, 1967.

James H. Dineen, Kittery, for appellant.

Robert J. Winton, York, for appellees.

Before WILLIAMSON, C. J., and WEBBER, TAPLEY, MARDEN, and DUFRESNE, JJ.

WILLIAMSON, Chief Justice.

The plaintiff-appellant brought separate actions against five members of the licensing board of the Town of York for denial of a victualer's license for his cocktail lounge on the asserted grounds of bad faith and malice. 30 M.R.S.A. § 2752—licensing board. On defendant's motion in each case the action was dismissed for "failure to state a claim upon which relief can be granted". Maine Rules Civil Procedure, Rule 12(b) (6). The Court ruled "immunity as a matter of law there being no allegation that Defendant profited from the alleged malice." The appeals followed from the dismissals.

For our purposes we accept the following as the facts:

In May 1964 the licensing board, of which the defendants were members, after hearing denied a victualer's license to the plaintiff. On July 6, 1964 a writ of mandamus sought by the plaintiff was denied. Three days later the plaintiff for the second time applied to the Board for a license. Again, after hearing, the application on July 31, 1964 was denied. The plaintiff thereupon commenced mandamus proceedings, this time successfully, and on August 24, 1964 a peremptory writ issued.

The five actions were commenced in March 1965, and in September 1965 defendants' motion in each case for summary judgment was granted "as it relates to all claims for damage to the date of denial on July 31, 1964, of the plaintiff's July 9, 1964, application for victualer's license, which represents the earliest date when the plaintiff could be issued a license under his application on said July 9."

The motions to dismiss before us were brought and granted in October 1965. We are fully satisfied from the record that the

charges of bad faith and malice in the complaints were made with reference to acts of each defendant in his capacity as a member of the licensing board.

Under Maine Rules Civil Procedure, Rule 12(b) (6), we construe the pleadings in favor of the pleader. We are not concerned with the niceties of pleading. "But it is incumbent upon this Court to ascertain also if the plaintiff by a fair construction of his complaint has propounded any provable claim susceptible of any relief sought." Parsons v. Chasse, et al., 159 Me. 463, 470, 195 A.2d 72 (1963) (appeal from dismissal sustained).

The test of dismissal under the Rule has been stated as follows:

"In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 102, 2 L.Ed.2d 80. "But a complaint should not be dismissed for insufficiency *unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim.*" 2A Moore's Federal Practice (2d ed.) ¶ 12.08.

See also Blackstone, et al. v. Rollins, et al., 157 Me. 85, 96, 170 A.2d 405; Field & McKusick Maine Civil Practice § 12.11; 1A Barron and Holtzoff—Federal Practice and Procedure § 356.

■ In our view we need not, and we do not, consider the validity of the ground for dismissal stated by the Court, supra. We place our decision that the complaints were properly dismissed not on a narrow point of pleading, but on a broad principle of substantive law. We hold that the members of a municipal licensing board are immune from civil liability for quasi-judicial decisions within the scope of their authority without regard for bad faith, malice, or other evil motives.

Under this principle, assuming that the complaints were otherwise sufficient, the plaintiff "to a certainty . . . is entitled to no relief under any state of facts which could be proved in support of the claim."

The licensing board consisting of the municipal officers, the treasurer and clerk of the town, is an administrative body which must exercise judgment and discretion in the issuance, suspension and revocation of licenses for innkeepers, victualers, and tavernkeepers. It may license "as many persons of good moral character, and under such restrictions and regulations as they deem necessary [and proper]." 30 M.R.S.A. §§ 2752, 2757; Kovack v. Licensing Board of City of Waterville, 157 Me. 411, 173 A.2d 554 (1961) (upholding the revocation of a victualer's license).

The Board, acting within its authority to license, was not a Court to be sure, but plainly was exercising quasi-judicial powers. Kovack v. Licensing Board of City of Waterville, supra; Chequinn Corp. v. Mullen, et al., 159 Me. 375, 193 A.2d 432 (victualer's license); Dunbar v. Greenlaw, 152 Me. 270, 128 A.2d 218 (insanity commitment).

■ The absolute immunity of a judge from civil suits for damages arising from his judicial acts is well settled. The law has long recognized that the public good is best served by freeing the judge from the possibility or threat of civil liability for an erroneous decision however evil the motives of the judge may have been. The judge who violates the trust placed in him by the State is answerable at the criminal dock and is subject to impeachment or other removal process.

In Pierson v. Ray, 386 U.S. 547, 87 S. Ct. 1213, 18 L.Ed.2d 288, Chief Justice Warren stated the principle in these words:

"Few doctrines were more solidly established at common law than the immu-

nity of judges from liability for damages for acts committed within their judicial jurisdiction, as this Court recognized when it adopted the doctrine, in Bradley v. Fisher, 13 Wall. (80 U.S.) 335, 20 L.Ed. 646 (1871). This immunity applies even when the judge is accused of acting maliciously and corruptly, and it 'is not for the protection or benefit of a malicious or corrupt judge but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences.' (Scott v. Stansfield, L.R. 3 Ex. 220, 223 (1868); quoted in Bradley v. Fisher, supra, [13 Wall.] at 349.) It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation."

See also Williamson v. Lacy, 86 Me. 80, 29 A. 943, 25 L.R.A. 506; Pratt v. Gardner, 56 Mass. (2 Cush.) 63, 68; Yates v. Lansing (N.Y.) 5 Johnson 282, 291; 3 Restatement, Torts § 585; 48 C.J.S. Judges § 63; 30A Am. Jur. Judges §§ 73, 74.

■ No one would suggest that members of a licensing board should be liable to an applicant for a decision erroneously denying a license. It is not error alone with which the defendants are charged; but error tainted with malice or corruption. The question is whether the defendants are entitled to the absolute immunity of a judge or to an immunity conditional upon the absence of malice or corruption. We have stated our conclusion that absolute immunity of the judge covers the members of the licensing board.

The member is required, among other issues, to pass judgment on the moral character of the applicant. A finding and judgment more sensitive to the applicant than that he has not established his good moral character can hardly be imagined. The responsibility of the licensing board in the exercise of its powers in the field of the regulation of the liquor business to the community, and to the applicants for licenses as well, cannot be overestimated.

If the disappointed applicant may sue the members of the board for damages for refusal to issue a license, we have a door open to actions harmful, although in the event groundless, to the character and reputation of the board member, and subjecting him to the expense, risks, uncertainties and vexations of litigation, and to the threat of such actions.

The classic statement of the reasons underlying absolute immunity is given by Judge Learned Hand in Gregoire v. Biddle (CA 2) 177 F.2d 579, 581:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means

of punishing public officers who have been truant to their duties; but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation."

In this case a complaint charging the Attorney General of the United States and other officials with the false arrest of an enemy alien "maliciously and willfully" was dismissed under Rule 12(b) (6) of the Federal Rules of Civil Procedure (from which our rule was taken).

Here without question the members of the licensing board acted within the scope of their authority. The license applied for was denied after hearing, and it is in connection with the denial that the actions charging malice and bad faith have arisen.

For examples of the application of absolute immunity to members of Boards with quasi-judicial functions see Sweeney v. Young, 82 N.H. 159, 131 A. 155, 42 A.L.R. 757, (school board); Wilson v. Hirst, 67 Ariz. 197, 193 P.2d 461 (State Hospital Board); Lang v. Wood, 67 App.D.C. 287, 92 F.2d 211 (parole board); Gibson v. Reynolds, 8 Cir., 172 F.2d 95 (Draft Board). Contra, Tyrell v. Burke, 110 N.J.Law 225, 164 A. 586 (Board of Embalmers).

For other statements of the principle in cases involving public officers see Nadeau v. Marchesault 112 Vt. 309, 24 A.2d 352 (overseer of the poor); Mills v. Smith (Okla.) 355 P.2d 1064, 82 A.L.R.2d 1144 (tax assessor); Rottkamp v. Young, 21 A.D.2d 373, 249 N.Y.S.2d 330 (affirmed 15 N.Y.2d 831, 257 N.Y.S.2d 944, 205 N.E.2d 866) (building inspector); Jaffarian v. Murphy, 280 Mass. 402, 183 N.E. 110, 85 A.L.R. 293 (mayor denying license); Suitor v. Nugent (R.I.) 199 A.2d 722 (attorney general).

The cases in which improper motives are charged are in conflict. For discussion of principles and illustrative material see 2 Harper & James, Torts § 2910; Prosser on Torts p. 781 (2d Ed.); 3 Davis Administrative Law § 26.04; 77 Harv.L.Rev. 209, 218, 224.

We recognize that in adopting the absolute immunity rule in this instance we are overruling our case law. In Donahoe v. Richards, 38 Me. 379 (1854) our Court, in a suit by a student against members of a school committee to recover damages for "maliciously, wrongfully and unjustifiably expelling her" from school, said at p. 397:

"It is not necessary to consider whether they acted wisely or not; if they acted in good faith in the exercise of their duty, they must be regarded as most clearly within the principles established in Stephenson v. Hall, 14 Barb. [N.Y.] 222; Dinsman v. Wilkes [Wilkes v. Dinsman] 7 How. [U.S.] 89 [12 L.Ed. 618]."

In 1924 in Shaw v. Small, 124 Me. 36, 41, 125 A. 496, the Court said of a school committee, "They exercise quasi judicial powers. [citing Donahoe] If they act in good faith they are not liable in damages even if clearly wrong." [again citing Donahoe]

Every informed citizen is constantly aware of the expanding use of boards and commissions with judicial or near judicial powers in the administration of government at all levels.

The licensing board and the school committee as we know have long histories. The Zoning Board is relatively a newcomer. Commissions such as the Industrial Accident, Public Utilities, Employment and Water Improvement come readily to mind. The examples could be multiplied.

In light of modern conditions, we have considered it appropriate to review the pol-

icies undergirding our accepted law. We have concluded that absolute immunity of the defendants from civil liability for quasi-judicial decisions within the scope of their authority as members of the licensing board is the rule best designed to serve the interest of the State.

We are satisfied that the advantage from the relief of public officers such as the defendant board members from civil actions or threat of civil actions by litigants who are or who may become disappointed applicants far outweighs any loss to applicants likely to arise from violation of their duties by such public officers.

The rule here expressed does not imply condonation of the solemn duty of a public officer to act in good faith, free from malice or other evil motives. The rule measures only civil liability. It does not touch the sanctions of the criminal law.

The entry will be

Appeals denied.

RUDMAN, J., did not sit.