Frank C. RODWAY

v.

Frank L. WISWALL et al.

Supreme Judicial Court of Maine.

June 29, 1970.

Herbert A. Crommett, Portland, Morton A. Glazer, Boston, Mass., for plaintiff.

Verrill, Dana, Philbrick, Whitehouse & Putnam, by Roger A. Putnam, and Howard H. Dana, Jr., Portland, for defendants.

Before WEBBER, MARDEN, DUFRESNE, and WEATHERBEE, JJ.

WEBBER, Justice.

Plaintiff appeals from a decision below dismissing his complaint for failure to state a claim against the defendants upon which relief can be granted. M.R.C.P., Rule 12(b) (6).

For our purposes the allegations of the complaint may be paraphrased and summarized as follows: On January 4, 1964 plaintiff was by contract employed by the 12 member Board of Trustees of the Maine Maritime Academy of the State of Maine to serve as Superintendent of the Academy for one year at a stated salary. The three named defendants were then and continued to be duly appointed and qualified members of the Board. Plaintiff performed the duties of his office until on April 21, 1964 he was notified by the Board that his services were terminated forthwith. The complaint avers that the defendants "did, individually and among themselves, intentionally, unlawfully and maliciously induce, persuade and coerce through malicious means of interference, intimidation, and by false and malicious reports and accusations concerning the plaintiff, directly and indirectly, a termination" of his employment. There follow allegations of damages. The second count is like unto the first except that there is added a charge of conspiracy to do the acts described.

The Justice below properly examined the complaint in the light of several legislative enactments which are pertinent. The Academy was first created by the Legislature as the Maine Nautical Training School by P. & S. L., 1941, Ch. 37. The Board of Trustees which originally num-

bered nine was placed in control of the "affairs of the school" and was specifically empowered to "appoint and remove necessary instructors and other employees." The name was changed to "Maine Maritime Academy" by P. & S. L., 1943, Ch. 102. By P. & S. L., 1947, Ch. 24 the Academy was "declared to be a public agency of the State of Maine for the purposes for which it was established." By P. & S. L., 1949, Ch. 39 the number of trustees was increased from 9 to 12. All trustees are appointed by the Governor with the advice and consent of the Executive Council. The Justice below concluded as do we that the trustees in the exercise of their authorized powers perform quasi-judicial functions.

All agree that we must first examine the holding in Richards v. Ellis (Me.1967) 233 A.2d 37. Plaintiff urges that we reconsider and overrule *Richards*. As in the instant case, *Richards* came to us on appeal from dismissal of the complaint for failure to state a claim under Rule 12(b) (6). The complaint sought damages from the defendant members of a town licensing board for their denial, based on alleged bad faith and malice, of plaintiff's application for a victualer's license. We first recognized that the complaint should not be dismissed unless it appears that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim. We then held that "the members of a municipal licensing board are immune from civil liability for quasi-judicial decisions within the scope of their authority without regard for bad faith, malice, or other evil motives." *Richards* was clearly a decision based upon public policy and which admittedly overruled prior case law which had applied the "good faith" test. It was deemed to be in the public interest to permit public officials and members of boards and commissions "with judicial or near judicial powers" to operate in an atmosphere immunized from the restraint and possible intimidation which might flow from the threat of vexatious personal suits. We see no occasion to depart from this position and therefore decline to overrule *Richards*.

Alternatively, plaintiff contends that even under the *Richards* doctrine, the defendants overstepped their authority and engaged in activity not protected and immunized as quasi-judicial functions. Plaintiff concedes that when defendants participated as trustees in the *employment* of plaintiff, they were engaged in a protected function, but, he argues, once plaintiff had been employed, the powers of the defendants diminished and they could not use methods tinged with malice and bad faith to induce and persuade their fellow trustees to *terminate* plaintiff's employment. To do so, plaintiff contends, was to exceed the scope of their authority and forfeit the protection afforded by *Richards*.

█ We cannot agree that the proper role of a trustee changes so dramatically as between the hiring and the firing of a Superintendent. It is a primary responsibility of the Board to review and appraise the actions of the chief executive officer and his general competence and efficiency. The effective continuation of an academic institution may depend upon the prompt dismissal of its administrative head, even though he may not be guilty of a technical breach of contract, and trustees are under obligation to bring to the attention of their associates information which bears upon his conduct, efficiency and judgment. We are satisfied that in order to foster the discharge of this trustee obligation, it is necessary to afford protection even to the trustee whose purported information is false and malicious and who acts in bad faith. The infrequency of such actions on the part of persons carefully selected for positions of trust is such as to justify the risk.

The plaintiff relies in part on the case of Shellburne, Inc. v. Roberts (Del.1968) 238 A.2d 331. *Shellburne* is distinguished upon its facts. There defendant was one of three Levy Commissioners who acted as a "Court" with respect to certain aspects of zoning. The defendant took it

upon himself, without the knowledge of his fellow Commissioners, to issue an order directing the Building Inspector to stop the plaintiff from proceeding with construction. The Court recognized that defendant was protected by an *absolute* immunity with respect to actions taken in his "legislative or quasi-judicial capacity." The Court viewed this particular independent action of defendant, however, as being "executive" in its nature. The Court deemed that if defendant's action was within the scope of his "executive" authority, but nevertheless under the existing circumstances wrongful, he was protected from personal liability by a "conditional immunity," the condition being that there be an absence of bad faith, malice or improper motive. The Court said, "A public *executive* officer is adequately protected, in our opinion, by such conditional immunity." (Emphasis ours.) The Court noted that the federal rule provides "complete immunity to executive officers acting within the scope of their authority," citing Barr v. Matteo (1959) 360 U.S. 564, 79 S. Ct. 1335, 3 L.Ed.2d 1434 but was of the view that this rule provides "too much protection for the public official and too little protection for the private citizen."

We need not determine here our preference as between the *Shellburne* rule and the *Barr* rule since we are not concerned with the acts of an executive officer or one acting in an executive capacity. The gravamen of the complaint in the instant case is that these defendants as trustees induced and persuaded the full Board, or at least a majority thereof, to take a quasi-judicial action unfavorable to the plaintiff, employing in the process false reports and other improper means of achieving their ends. There is no intimation or suggestion in the complaint that the defendants took any independent or what might be termed "executive" action against the plaintiff. The action terminating plaintiff's employment was by the full Board and not by defendants alone. The complaint is addressed exclusively to the methods by which this vote is alleged to have been procured.

Plaintiff cites Kletschka v. Driver (1969) 2 Cir., 411 F.2d 436. We distinguish that case on the same grounds. *Kletschka* does not involve the exercise of quasi-judicial authority.

 We conclude that a fair reading of the complaint brings it squarely within the purview of *Richards* and defendants are protected by the absolute immunity granted to trustees while engaged in quasi-judicial functions. Our decision being so grounded it becomes unnecessary to consider other reasons advanced by the Justice below for his decision to dismiss the complaint.

Appeal denied.

WILLIAMSON, C. J., and POMEROY, J., did not sit.