WINNIFRED DUTCH

*vs.*

THE GAMAGE BROKERAGE COMPANY AND W. J. GAMAGE.

Washington.    Opinion June 1, 1921.

*Rescission and cancellation of a written contract on the ground of fraud and misrepresentation, and the further ground that it was unconscionable.*
*Allegations not sustained.*

Bill in equity to obtain the rescission and concellation of a written contract on the ground of fraud and misrepresentation and on the further ground that it was unconscionable. On appeal by defendant from decree of the sitting Justice sustaining the bill it is,

*Held:*

1.  That the representations of the plaintiff so far as material were based upon facts.

2.  That the contract was drafted by the plaintiff's attorney at her request and in accordance with her instructions.

3.  That the plaintiff was a young woman of intelligence and some business experience and must have fully comprehended the meaning of the contract.

4.  That the contract was not unconscionable, that both parties worked under it for a period of three years and even up to the day before the trial. Had there been ground for rescission the right was not exercised within a reasonable time.

On appeal by defendant.    A bill in equity praying for the cancellation of a written contract entered into by plaintiff and defendant on the ground of fraud and misrepresentation, and a further ground that it was unconscionable. The cause was heard upon bill, answer, replication, and proof before a single Justice who sustained the bill, and defendant appealed from such finding. Appeal sustained. Decree reversed.    Bill dismissed with costs.

Case is stated in the opinion.

*Herbert J. Dudley,* for plaintiff.

*Charles E. Gurney,* for defendant.

SITTING: CORNISH, C. J., SPEAR, PHILBROOK, DUNN, WILSON, DEASY, JJ.

CORNISH, C. J. Appeal in equity by defendant. The bill was brought in November, 1919, to obtain the rescission and cancellation of a written contract entered into between the parties on October 9, 1916. The ground is fraud and misrepresentation on the part of the defendant, the plaintiff alleging that she unwittingly signed the agreement without foreseeing or comprehending its effect, and the further ground that the consideration was grossly inadequate and the agreement in itself so unconscionable that it should not be allowed to stand.

By the terms of the contract the plaintiff appointed the Gamage Brokerage Company her sole agent in the States of Maine, New Hampshire and Vermont to sell home made candies known as Dutch Dainties for a term of ten years and agreed to appoint no other agent in any of these States but reserved to herself the right to continue to sell these candies in Calais, Eastport and Woodland, Maine, without payment of any commission to the defendant. A commission of fifteen per cent was to be paid on all Dutch Dainties sold by the defendant either directly or by mail order elsewhere in these three States, settlements to be made on or before the tenth of each month, the price at all times to be fixed and controlled by the plaintiff and the right to accept or reject any orders received through the defendant directly or indirectly to be reserved to her. The defendant on his part agreed not to handle or sell any other home made sweets in these three States.

The false representations set forth in the bill as the basis of rescission are as follows, quoting the language of the bill itself:

"That she entered into said agreement on the day following her twenty-first birthday, and that she was at that time wholly without experience in business matters; that said defendant represented that he had been a travelling salesman in the candy business for many .years, and that he did a tremendous business in the States of Maine, New Hampshire and Vermont, and that he visited his customers in all said States once every ten days; that he gave the closest attention to his said business, and that he sold goods only to the best stores in each town, and that it would be greatly to the advantage of the plaintiff to enter into the agreement set out in said plaintiff's exhibit

"A", and influenced by the shrewdness of the defendant, and reposing confidence in him, and moved by his representations of the volume of his business, and his broad experience in the sale of candies, and the many advantages to accrue to her, she was thereby induced to sign said agreement, and did unwittingly sign the same, the effect of which she did not intend, foresee or comprehend. That the said representations made by the said defendant for the purpose of inducing her to sign said agreement were known by said defendant on said October 9th, 1916, to be false, and the same were at that time believed by the plaintiff to be true, but she now knows and alleges that they were false and fraudulent and made by the defendant for the purpose of taking advantage of the simplicity and credulity of the plaintiff, and to induce her to enter into said agreement."

Applying what might be termed the uncontradicted testimony to these allegations, we find that so far as material they are proven to be true rather than false. Mr. Gamage had been a traveling salesman for many years, more than fifteen years in fact, when the contract was made; he had done a large business in Maine, New Hampshire and Vermont, his sales in 1916 aggregating approximately $100,000; he visited his customers frequently, though not as often as once in ten days, which apparently would be impossible; he gave close attention to his business, and won a competitive prize in 1916 for the amount of business done. He sold to the best customers in each town, parties of financial responsibility. The charge of false representations of material facts is absolutely without foundation.

That the plaintiff unwittingly signed the contract is equally unsupported. From her own testimony it appears that she had been carrying on the home made candy business in Calais since the Spring of 1914, selling from 300 to 400 pounds a month through her own efforts. She was desirous of extending her sales into other territory and of increasing her business. She met Mr. Gamage in response to a telephone call from him in the spring or summer of 1916, and they talked over the situation. He told her what agreement he was willing to make, and she said she would think it over. They then separated. She did think it over and apparently was satisfied with the plan because subsequently she went to her own attorney in Calais and employed him to draw up the contract which is in the case embodying the terms she had talked over with Gamage. Gamage had no part whatever in drafting the agreement. He was not even in Calais

at the time. It was done at her solicitation and by her attorney in accordance with her instructions. After it was completed she kept it in her own possession until Gamage came again to Calais in October, 1916, and then it was executed. The only blank left in the instrument by the attorney was the number of years it should continue in force. The plaintiff wanted it for one year, the defendant for ten, and ten was inserted.

Under these circumstances it is idle to claim that the plaintiff executed the contract unwittingly and without comprehending its effect. She was a young woman twenty-one years of age, of intelligence and of two years experience in this business. She was not hurried into the contract by a designing party but took her own time for consideration and had the instrument drafted in accordance with her views. It may be that it has not proven quite as remunerative as she expected, but that fact affords no reason for destroying the contract itself.

The case is barren of any facts showing fraudulent acts or statements on the part of the defendant that induced the plaintiff to make the contract, and considering the fact that she practically dictated its terms she cannot now be permitted to effectively claim that she did not intend, foresee or comprehend its effect, and that she supposed the defendant would sell all her product outside of the three towns named. This contention under the circumstances carries little weight. *Metcalf.* v *Metcalf*, 85 Maine, 473; *Eldridge* v. *Railroad Co.*, 88 Maine, 191.

"If there were no elements of fraud, concealment, misrepresentation, undue influence, violation of confidence reposed, or of other inequitable conduct in the transaction, the party who knew or had an opportunity to know the contents of an agreement or other instrument, cannot defeat its performance, or obtain its cancellation or reformation, because he mistook the legal meaning and effect of the whole or any of its provisions." Pomeroy's Eq. Juris., 3rd Ed., Section 843. Contracts ultimately unsatisfactory must not be confounded with contracts originally fraudulent and therefore voidable. Otherwise the making of a contract would be an idle ceremony.

Nor is there merit in the plaintiff's claim that the consideration was grossly inadequate and the agreement unconscionable. Inadequacy of consideration if it exists, may bear strongly upon the question of fraud, but here it would seem that the defendant's efforts have

produced the publicity and the sales which the plaintiff had in view. In 1917 his sales amounted to about $5,000; in 1918, to 5,226 pounds in Maine, 627 in New Hampshire, and 293 in Vermont, a total of 6,146 pounds; while in 1919, the total was 5,942 pounds or about $7,000 in value. The plaintiff admits that she has twenty-four regular customers in Maine, New Hampshire and Vermont that have come to her through the defendant, and ten in Maine through her own effort. She also sells in Massachusetts, New York, Pennsylvania and Canada, and of her total output about one-fourth is the result of the defendant's labors, and three-fourths, of her own. Having worked up his portion of this trade on a commission basis, it would hardly seem equitable now for the court to divorce the defendant from all further connection with it and give the plaintiff the benefit of these years of publicity free from all commissions. That is what the bill asks.

Another fact must not be overlooked. This contract was made October 9, 1916. This bill was brought in November, 1919, and heard in February, 1920. More than three years elapsed between the making and the would-be breaking, and during all that time the defendant was securing customers and trade and the plaintiff was accepting the orders. Even up to the very day before the trial orders were sent in by him and accepted. What is a reasonable time for rescission when the facts are undisputed is a question of law. *Hotchkiss* v. *Coal & Iron Co.*, 108 Maine, 34. Under the undisputed facts in the case at bar there can be no doubt that had there been ground for rescission it was not seasonably exercised. Neither law nor equity permits such playing of fast and loose with the rights of the adverse party.

In sustaining this appeal we do not overlook the force given to the finding by a single Justice in a cause in equity. But where there are few contradictions over material facts and the credibility of witnesses is not involved, the force of the finding is necessarily lessened. The plaintiff and defendant are the only material witnesses in this case and their recollection is not greatly at variance.

*Appeal sustained.*
*Bill dismissed with costs.*