AMERICAN FIDELITY CO.

*vs.*

GEORGE F. MAHONEY, INSURANCE COMMISSIONER

Kennebec.   Opinion, October 31, 1961.

*Linnell, Perkins, Thompson, Hinckley & Thaxter*
  *By Casper F. Cowan,* for plaintiff.

*Orville T. Ranger, Asst. Atty. Gen.,* for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN DUBORD, SIDDALL, JJ.

SULLIVAN, J.   Defendant for stated reasons had notified the plaintiff that an individual operator's liability insurance policy and an additional insured endorsement therefor both of which the plaintiff had proposed to use did not meet with the defendant's official approval.   The plaintiff thereupon filed in the Superior Court its appeal from such a determination by the defendant and the controversy has been reported to this court.   R. S., c. 60, § 6, P. L., 1957, c. 42; Rule 72, Maine Rules of Civil Procedure, 155 Me. 573.

The defendant had summarized his disapprobation of the policy and endorsement in two strictures:

"(1)  It is misleading in that the coverage afforded by it is so limited as to be beyond the reasonable comprehension of the average policyholder, who, through the years, has been educated to a broadening of coverages under liability policies insuring his automobile.

(2)  It is capable of a construction which is unfair to the assured or the public because the assured would normally expect coverage to exist where it does not, and the public, therefore, would be left unprotected in many instances. Furthermore, studies by various groups over the years indicate that comprehensive changes

in the laws of agency, vicarious liability, and financial responsibility must be made before an insure-the-driver form of policy could operate fairly."

Subsequently the defendant had additionally communicated to the plaintiff these 20 particularized details which had motivated the defendant's reproval of the policy and endorsement:

"(1) There is no liability coverage for the named insured while his car is being operated by anyone else with or without his permission, when he is not a passenger.

(2) There is no liability coverage for anyone who drives the car of the named insured with or without his permission, unless he is a passenger.

(3) There is no liability coverage for the named insured when his spouse, a member of his family, or his employee or agent is driving under (1) above.

(4) There is no liability coverage for the spouse of the named insured, or a member of his family, or his employee or agent who is driving under (2) above.

(5) There is no liability coverage for the named insured owner of the car when his son is driving the car with his permission with his wife as passenger, even though the wife is a named insured.

(6) There is no liability coverage for the son under (5) above.

(7) There is no liability coverage for the wife under (5) above.

(8) There is no liability coverage for the named insured or anyone else under any condition for damage caused by the negligent maintenance of the insured's car.

(9) There is no liability coverage for anyone operating a car not owned by the named insured even though the named insured is a passenger. For example, a rented car, a leased car, a company car, or a borrowed car.

(10) There is no liability coverage for the named insured riding as a passenger in a non-owned automobile.

(11) 'Motor vehicle' is not defined. The explanation that the term 'motor vehicle' need not be defined because it already has a well-defined meaning in the Maine law begs the question, since the policyholder cannot be expected to read the Maine law in order to understand what his coverage is.

(12) An apparent attempt is made to provide additional coverage in the 'Exclusions' part of the policy. For example, Part 1, Coverage A states the company will pay for certain damages arising out of the *operation* of an automobile. The 'Definitions' under Part 1 define an automobile as a private passenger, farm, or utility automobile or trailer. The 'Exclusions' under Part 1 state that the policy does not apply under Part 1 to any *operation* as a public or livery conveyance, but that this exclusion does not apply to respect to bodily injury or property damage which results to the named insured's occupancy or (of) a non-owned automobile other than as the operator thereof, for which no coverage is provided anyway. The meaning of this is certainly obscure.

(13) The policy does not cover the named insured as a passenger in a non-owned automobile for his negligence in causing an accident whether by directing the operation of the automobile, distracting the driver, or as the result of a joint venture.

(14) 'War' is defined but not used in Part 1 of the policy.

(15) Part (2) of the new definition of 'Operation' is not entirely clear. The reference to 'his' owned automobile would seem to mean any insured's owned automobile, but under the 'Persons Insured' provision, persons other than the named insured only have coverage with respect to the automobile owned by the named insured.

(16) The definition of 'Operation' is still unsatisfactory. Does it cover only operation, or does physical control and regulation include maintenance, use, and ownership?

(17) There is no medical payments coverage for the named insured while occupying a motor vehicle not his own.

(18) Exclusion (i) has been omitted from the amendatory endorsement.

(19) The policy provides for automatic cessation upon the date of death of the named insured. Such a provision is certainly not in the public interest, because it would deprive the family of the named insured of protection during a time when matters such as automobile insurance are not likely to be given any thought.

(20) The result of the narrow scope of the coverage afforded by the policy and the lack of clarity of its terms is to provide the public with less protection than it might reasonably expect. The fact that the cost of this policy is less than that of standard forms is not a valid basis for its approval when it does not provide adequate protection to the public."

Ostensibly the defendant rested his administrative ruling upon the subjoined statutory language, resolving that the policy and endorsement are:

"- - - - misleading or capable of a construction which is unfair to the assured or the public, - - - -"

R. S., c. 60, § 6, as amended.

It must be noted that compulsory motor vehicle liability insurance does not obtain in Maine save for the limited provisions of R. S., c. 22, §§ 75 through 82, the Financial Responsibility Law, which are of no moment here. Nor has the Legislature adopted or prescribed any standard form of motor vehicle liability policy.

The specimen policy submitted by the plaintiff for the consideration of the defendant bore in red letters upon its cover the following premonition:

### "INDIVIDUAL OPERATOR'S LIABILITY POLICY

### LIMITATION

This is not a Standard Automobile Policy. It cannot be written for persons who on the application date are required to file Certificates of Financial Responsibility.

It protects the individuals, named in the policy, against liability due to their operation of an automobile but in general does not cover operation of the insureds' automobiles by others.

### PLEASE READ THIS POLICY"

The premium for the subject policy would be less than the cost of a more conventional liability policy because of curtailed risks and of fewer insured losses. Any assured, therefore, would be fairly chargeable with heed to the practical axiom that one receives only in proportion to the amount he pays. The policy is calculated to accommodate holders in the less endowed financial group, parents whose children have become *sui juris* and persons in general who do not, or who find rare occasion to, lend their cars. None of these potential customers is normally obligated to purchase any liability insurance. It is understandable that the availability of such a policy might serve to augment the number of the assured. It is likewise foreseeable that the

policy could effect a diversion from the more extensive coverage of present policyholders who for their own more adequate protection and from concern for the public weal might otherwise be prone to retain the broader insurance. Such speculations must attend an empirical answer.

In this case it becomes the statutory duty of this court to:

"- - - - determine whether or not the reasons assigned by the commissioner are valid- - - -"

R. S., c. 60, § 6, as amended.

The administrative authority of the defendant as an executive officer is restricted to requisite fact finding and to needful regulation delimited within the policy, standard and rule affirmatively established for his guidance by the Legislature.

"- - - - Its authority is no less nor more than the legislative body has given it - - - -"

*Kovack* v. *Licensing Board*, - - - Me. - -,

"The Constitution as a continuously operative charter of government does not demand the impossible or the impracticable. It does not require that Congress find for itself every fact upon which it desires to base legislative action or that it make for itself detailed determinations which it has declared to be prerequisite to the application of the legislative policy to particular facts and circumstances impossible for Congress itself properly to investigate. The essentials of the legislative function are the determination of the legislative policy and its formulation and promulgation as a defined and binding rule of conduct - - - - - The essentials are preserved when Congress has specified the basic conditions of fact upon whose existence or occurrence, ascertained from relevant data by a designated administrative agency, it directs that its statutory command shall be effective. It is no objection that the determination of facts and the

inferences to be drawn from them in the light of the statutory standards and declaration of policy call for the exercise of judgment, and for the formulation of subsidiary administrative policy within the prescribed statutory framework - - - -" *Yakus* v. *U. S.*, 321 U. S. 414, 424.

It has been a consistent tradition of our decided cases that one who enters a relation evidenced by a writing is bound by its terms in the absence of very exceptional circumstances of a voiding equitable nature. The law of contracts, sales, the parol evidence rule, etc. attest to that truth. *Watkins Medical Co.* v. *Stahl*, 117 Me. 190, 191; *Peterson Co.* v. *Parrott*, 129 Me. 381, 382; *Dutch* v. *Gamage*, 120 Me. 305, 308; *Spaulding* v. *American Realty Co.*, 121 Me. 493, 497; *Lavoie* v. *Auburn*, 128 Me. 412, 413 *("caveat emptor")*. Latter day social legislation has done much as in labor laws and in investment security acts to equalize the trading position of persons otherwise less advantaged to negotiate at arms' length with their better positioned fellows. However, the law has not been characteristically paternalistic. The Legislature in its praiseworthy measure to protect policyholders and the public from misleading liability policies and from those capable of a construction which is unfair intended a quantified censorship. Yet the Legislature has expressedly assumed no mission to require broad liability coverage or any. Purchasers of liability insurance are left uninhibited in their selective judgment of amount and kind of available insurance. The Legislature has exercised its police power to prevent the use in this State of any perceptibly guileful or delusive or illusory policy and of any policy logically and demonstrably susceptive to an interpretation or construction inequitably thwarting or frustrating the assured or the public.

The Legislature has not relieved policyholders from the pains and consequences of reading and choosing such policies as are not reprehensibly misleading or amenable to un-

fair construction. Such policyholders must continue to be presumed by the ordinary rules of law to know the contents of their policies whether the policies are read or not. *Watkins Medical Co.* v. *Stahl,* 117 Me. 190, 191. It is quite true that the Legislature must have been aware that all too many insurance policies are not read and are not easy to read intelligibly. The Legislature concerned itself only with the specific evils which it listed. It was not monitoring comprehensible forthright policies for any breadth, depth and multiplicity of coverage beyond what the expressed meeting of the minds of the freely contracting insured and insurer might negotiate.

The plaintiff in its contest of the rulings and 20 detailed specifications of the defendant set forth earlier in this opinion readily affirms that its proposed policy with the endorsement is designedly restricted in coverage and directs attention to the cautionary limitation imprinted in red by the plaintiff on the obverse cover of the policy.

Plaintiff generally concedes that the coverage of the policy is as the defendant describes it. Plaintiff comments that broader coverage as to protected personnel and as to risk may be had by the insured as desired for an enhanced premium. Defendant's statement in specification 5 is objectively true and plaintiff's disagreement with it is incorrect. The insured is protected with expressed exceptions while operating a nonowned automobile and for negligent operation of a motor vehicle. Insured does not receive the broader coverage against negligent maintenance of his car and against certain negligence apart from operation. Medical payments coverage is plain if not plenary. The scope of the coverage afforded by the policy is comparatively narrow. The Legislature has not ordained any greater coverage or any coverage at all.

In the instant case this court is not to prescribe a policy. We judge the validity of the reasons which the defendant

assigned for his disapproval of the policy in issue. The disapproval of the defendant must be an exercise of sound discretion.

In its response to defendant's 6th and 7th objections to the policy plaintiff acknowledges that there is at least technical justification for the Commissioner's censure. Plaintiff's assurance that despite a persisting nebulous element it would recognize and honor a sort of joint ownership in insured wife and husband is commendable but does not constitute a firm legal commitment. The policy requires confirmatory clarification conclusively presuming a non-owning and insured spouse of an owner to be an owner.

A definition of the term, *"motor vehicle"*, as the defendant insists in specification 11 is at least preferable and facile.

Dissatisfaction of the defendant as to the definition of *"operation"* in specification 16 and specifically as to the phrase, *"to physically control and regulate"* is warranted and the ambiguity should be dispelled.

The external red warning upon the policy runs in part as follows:

> *"It protects the individuals, named in the policy, against liability due to their operation of an automobile - - - -"*

(Italics ours.)

But the policy internally contains coverage exclusions, *inter alia:*

> "(g)  to bodily injury to (1) the spouse or any parent, son or daughter of the insured,- - - -"

The exclusion (g) withholds coverage against bodily injuries to any son or daughter emancipated or adult at the time of an accident. (Anno. 122 A. L. R. 1355.) The policy obviously does not *fully* protect "the individuals, named in

the policy, against liability due to their operation of an automobile "as implied so conspicuously and notably in the warning which hints of no reservation. The red caution requires becoming modification in its language to square with the reality of the liability coverage. The defendant in his more comprehensive disapprobation of the policy has in principle protested such shortcoming.

It is our opinion that the reasons assigned by the defendant are accordingly valid in part and invalid in part. R. S., c. 60, Sec. 6, as amended; Rule 80 B, M. R. C. P., 155 Me. 592. Policy disapproval applicable to the warning and specifications of disapproval numbered 6, 7, 11 and 16 are determined to be valid and are sustained.

*Appeal denied.*

DUBORD, J., CONCURRING

I would concur in denying the appeal, but base my finding upon much broader grounds than those specified in the majority opinion.

Section 6, Chapter 60, R. S., 1954 reads in part as follows:

> "If the commissioner shall notify any insurance company doing business in the state that any policy form or form of endorsement used or proposed to be used by any such company does not meet with the approval of the commissioner, for the reason that it does not comply with the statutes of this state or is otherwise illegal *or is misleading or capable of a construction which is unfair to the assured or the public,* (emphasis supplied) such policy form or form of endorsement shall not thereafter be used by such company in the state."

Pursuant to authority vested in the commissioner, he disapproved the policy in question for two principal reasons, viz.:

(1) That the policy is misleading in that the coverage afforded by it is so limited as to be beyond the reasonable comprehension of the average policyholder; and (2) the policy is capable of a construction which is unfair to the assured or the public because the assured would normally expect coverage to exist where it does not; and the public, therefore, would be left unprotected in many instances.

These two principal statements of disapproval were enlarged by twenty detailed reasons which are set forth in the majority opinion.

It is not my intention to discuss in detail all of the twenty reasons specified by the commissioner. However, I make reference to a few of them.

Under specification (1), (2), (3), and (4), it is indicated that there is no liability coverage for the named insured while his car is being operated by anyone else with or without his permission, when he is not a passenger. This includes the spouse of the named insured, a member of his family, or his employee or agent.

Under specification (5), it is pointed out that there is no liability coverage for the named insured owner when his son or daughter is driving the car with his permission with his wife as passenger, even though the wife is a named insured.

When we consider, in relation to this specification, the provisions of Section 156, Chapter 22, R. S., 1954, which makes an owner of a motor vehicle causing or knowingly permitting a minor under the age of 18 years to operate such vehicle upon the highway, jointly and severally liable with such minor for any damages caused by the negligence of such minor, it is easy to visualize one of the great weaknesses of this policy.

Under specifications (19), it is pointed out that the policy provides for automatic cessation upon the date of death

of the named insured. This is a clause most dangerous to the public and is not commented upon in the majority opinion. Under the ordinary liability policy, the coverage remains in force and the estate of the insured is afforded protection.

Moreover, many of the terms of the policy are veiled in obscurity and nebulousness.

For example, in describing the named insured, the policy provides as follows:

> "The following are insured under Part 1: (a) The named insured, with respect to (1) his operation of any motor vehicle, except that no coverage is afforded hereunder for the operation of any vehicle other than an automobile (as defined hereunder) if such vehicle is owned by or regularly and frequently used in a business or occupation of the named insured, and (2) the operation of an automobile by a 'person insured'."

In defining the meaning of the word "operation" there is a clause in the policy which reads as follows:

> " 'Operation' means to physically control and regulate; to have charge of it as the driver; and includes the insured's legal liability for Bodily Injury and Property Damage (1) caused by the automobile whether owned or non-owned while the insured leaves it unattended, (2) caused by his owned automobile while it is in the care and custody of a garage, service station, repair shop, storage garage or public parking place; provided however that with respect to this coverage . . . ."

Ability to read and understand these two clauses warrants defiance, and there are many other clauses just as difficult of comprehension.

Conceding the honesty of the motives of the company in drafting a contract of restricted liability which can be sold at a low premium, what about the acts of unscrupulous

agents in selling this policy without explaining either with intention or carelessness how restricted is the liability?

Granting that persons have a right to enter into contracts which are not clouded with fraud or otherwise illegal, no argument is needed to point out that the ordinary, average person, does not read his policy of insurance and if he does so, has great difficulty in understanding the many clauses contained therein. If we can suppose that a prospective purchaser of this policy were told there was no liability for his spouse, a member of his family, or an employee or agent in driving the insured car with or without permission unless he is a passenger; that the policy ceases upon his death; that if he allows his 17 or 18 year old son or daughter to use his car there is no coverage; or if he sends a friend to a neighborhood store with his car to run an errand there is no coverage; then if the policy is purchased with a full and clear understanding of its contents there would be no legal objection to such a contract.

However, there is a matter of public policy involved here. The sale of this policy will undoubtedly lead to unsatisfied judgments and litigation between the policy owner and the company involving matters of interpretation and construction.

It is my considered opinion that when the legislature enacted Section 6 of Chapter 60, it was imbued with a praiseworthy desire of affording protection to the public and had within its contemplation a situation such as is now before us.

The commissioner has properly exercised the power and discretion reposed in him. He is to be commended for using his prerogative in the interests of the public welfare. I would sustain all of his findings and deny the appeal.

*Appeal denied.*