PATRICK CAMPBELL *vs.* L. O. CHABOT.

Androscoggin.    Opinion September 28, 1916.

*Duress. Effect of making payments on note claimed to have been signed under duress. Essential elements necessary to prove duress Waiver of duress.*

Motion by defendant to set aside verdict for money paid under duress created by malicious threats of prosecution.

1.  Threats of prosecution, either civilly or criminally, are to be distinguished from threats of imprisonment, and threats of prosecution are sufficient to avoid an act only as they are connected with threats of imprisonment either illegal in its beginning or which by its abuse becomes illegal. Moreover the fear of imprisonment must be sufficient to overeome the will of a man of ordinary firmness and constancy.

2.  Whether a precept has been issued or is about to be issued is an important factor in the case.

3.  A threat of prosecution simply, before the commencement of any legal proceedings, does not necessarily include an arrest. It is no more than assertion that the proper steps will be taken to institute a legal process which may or may not result in the arrest of the person. Whether the process is to be initiated before a magistrate or the grand jury, the law so shields it by the oath of the complainant and witnesses, as well as by the official oaths and responsibilities of the magistrate and jurors, that the danger of imprisonment from such a threat is too remote and contingent to overcome the will of an innocent person of common firmness.

4.  Mere threats of criminal prosecution, when no warrant has been issued, nor proceedings commenced, do not constitute duress.

5.  If a person, constrained by duress to do an act, afterward voluntarily acts upon it, or in any way affirms its validity, he precludes himself from then avoiding it.

Action on the case to recover certain sums of money paid by plaintiff to defendant, alleging that defendant did maliciously threaten to prosecute the plaintiff by accusing him of having committed a certain crime or felony. Defendant pleaded general issue and brief statement setting forth that if any money was paid to defendant by plaintiff, he, the defendant, was acting solely as the agent of the plaintiff and employed by the plaintiff for that purpose.

Verdict for plaintiff. Defendant filed motion for new trial. Motion sustained. New trial granted.

Case stated in opinion.

*George S. McCarty,* for plaintiff.

*H. E. Holmes,* for defendant.

SITTING: CORNISH, KING, BIRD, HALEY, PHILBROOK, MADIGAN, JJ.

PHILBROOK, J. Motion by defendant to set aside verdict for money paid under duress created by malicious threats of prosecution. The plaintiff's only gravamen is duress. In his declaration he asserts "that by reason of said threats of prosecution made to him by the defendant he was induced and compelled to pay to the defendant certain sums of money." He makes no claim of fraud imposed and it may well be doubted whether such a claim could now be made by amendment to his declaration, or by considering the same to be amended as allowed in *Cowan* v. *Bucksport,* 98 Maine, 305, or in *Wyman* v. *American Shoe Finding Company,* 106 Maine, 263. The case must stand or fall upon the claim of duress.

The only witnesses in the case were the plaintiff and the defendant. That their statements are contradictory on all essential points is not surprising. For the purposes of this discussion let us examine the testimony of the plaintiff, giving it credence, and determine whether it satisfies the claim of duress. He says that having received a letter from an attorney, whose surname is the same as that of the defendant, he went to the office of the latter by mistake, that having been shown the location of the attorney's office he went there but returned to defendant's office and told him the attorney was absent and would not return for three days. It developed that a certain young woman had accused the plaintiff of improper conduct and some talk ensued about calling her to defendant's office and about writing her a letter. On the following evening plaintiff again called at defendant's office by request and was told by defendant that the case could be settled for seven hundred dollars. The plaintiff replied that he had no money, whereupon the defendant opened a book, which proved to be a copy of the Revised Statutes of this State, and read about the offence of "unnatural relations," as the plaintiff testified. Quoting further from plaintiff's testi-

mony, are these words: "He read a lot of stuff out of it. It was ten to twenty years for that crime, and I said 'I didn't do it.' Well he says, 'she says you did.' I says 'I didn't.' And he says 'ten to twenty years; and you don't settle with her and you will go to jail.'" The plaintiff was then told that the claim could be settled for four hundred fifty dollars and he signed a note for that amount on October 17, 1915, or, in other words, at the second call, the first call being October 16. After signing the note, he told the defendant he had some money in the bank, to which defendant replied "you get it out before the other Chabot comes back and fetch it to me. If you don't you will go to jail." This was on Tuesday, and on the Thursday next following, October 19, the plaintiff paid the defendant one hundred forty-three dollars and took a receipt "on acct. M. Gagne," who was the young woman in the case. At that time the defendant said "If you ever mention it on the outside, anything about this transaction, I will push you to jail anyway." When the one hundred forty-three dollar payment was made the four hundred fifty note was destroyed and the plaintiff signed a new note. On each of the three Fridays following the signing of the last note the plaintiff made payments, two being five dollars each and the last four dollars, going to defendant's office for that purpose. After the four dollar payment the plaintiff refused to pay any more and was told by the defendant "Well you will go to jail if you don't." Nothing more was paid. At the same interview the defendant said "You don't want to bother with her any more about settling this thing. She has got nothing at all to do with it. It is right in my hands, and I hold this note right here in my pocket, and you will pay that money or go to jail." Nothing was paid after this was said. We have now detailed the alleged threats as testified to by plaintiff, some being before and some being after the signing of the notes and some being after the last payment was made. Do these threats constitute duress in law? We think not.

It seems not inappropriate to turn back to statements of law well settled for us by time and by repeated approval of this court. In Bacon's Abridgment, Vol. 2, p. 156, upon the authority of Lord Coke, we find that for menaces or threats a man may avoid his own act in four instances, 1, For fear of loss of life; 2, Of loss of member; 3, Of mayhem; 4, Of imprisonment. We are not con-

cerned with the first three in this discussion. Fear of imprison-ment is here under consideration. It should be noted that threats of prosecution, either on the civil or on the criminal side of the court, are to be distinguished from threats of imprisonment, and threats of prosecution are sufficient to avoid an act only as they are connected with threats of imprisonment either illegal in its begin-ning or which by its abuse becomes illegal. Moreover the fear of imprisonment must be sufficient to overcome the will of a man of ordinary firmness and constancy. *Harmon* v. *Harmon,* 61 Maine, 227. Whether a precept has been issued or is about to be issued is an important factor in the case. In *Eddy* v. *Herrin,* 17 Maine, 338, relied upon by plaintiff, and in the earlier case, *Whitefield* v. *Longfellow,* 13 Maine, 146, warrants had been actually issued against the threatened person. Not so in the case at bar. "A threat of prosecution simply, before the commencement of any legal pro-ceedings, does not necessarily include an arrest. It is no more than an assertion that the proper steps will be taken to institute a legal process, which may or may not result in an arrest of the person. And whether the process is to be initiated before a magis-trate or the grand jury, the law so shields it by the oath of the complainant and witnesses, as well as by the official oaths and responsibilities of the magistrate and jurors, that the danger of imprisonment from such a threat is too remote and contingent to overcome the will of an innocent person of common firmness." *Harmon* v. *Harmon,* supra. In *Higgins* v. *Brown,* 78 Maine, 473, our court held that mere threats of criminal prosecution, when no warrant had been issued nor proceedings commenced, do not con-stitute duress. Again in *Hilborn* v. *Bucknam,* 78 Maine, 482, it is declared that it is not duress for one who believes that he has been wronged to threaten the wrong doer with a civil suit, and if the wrong includes a violation of the criminal law it is not duress to threaten him with a criminal prosecution. The same principle has been affirmed in *Thorn* v. *Pinkham,* 84 Maine, 101, and in the very recent case of *Knowlton* v. *Ross,* 114 Maine, 18.

Thus it seems quite clear, from a careful study of the evidence in the light of well settled rules of law, that no duress was established by the testimony in this case.

But even if it should still be claimed that duress compelled the signing of the note, it may well be doubted whether the claim of duress has not been waived by the three payments of money which seem to have been voluntary. For if a person having been constrained by duress to do any act, afterward voluntarily acts upon it, or in any way affirms its validity, he precludes himself from then avoiding it, *Knowlton* v. *Ross,* supra.

Since no exceptions were taken to any ruling or instruction of the presiding Justice we must assume that the principles of law governing the case were correctly stated but that the jury either misunderstood or misapplied those principles and consequently manifestly erred in arriving at the conclusion which they did. It becomes our duty thereupon to issue the mandate.

*Motion sustained.*
*New trial granted.*