FRANZ U. BURKETT, ATTORNEY-GENERAL, BY INFORMATION,
PETITIONER FOR MANDAMUS, HERBERT W. LEACH, RELATOR

*vs.*

FREDERICK ROBIE, SECRETARY OF STATE.

Penobscot. Opinion, August 21, 1940.

*Arthur L. Thayer,*
*Ross St. Germain,* for relator.
*Harold Towle,* for defendant.

SITTING: STURGIS, C. J., THAXTER, HUDSON, MANSER, WORSTER, MURCHIE, JJ.

MANSER, J. On exceptions by relator to the ruling of a justice of the Superior Court denying the peremptory writ and quashing the alternative writ which had been issued on a petition for mandamus to compel the secretary of state, of the State of Maine, to reject and not count certain votes which had been cast at the primary election held in this state on June 17, 1940, for the nomination of candidates to be voted for at the state election to be held in September, next; to compel said secretary to issue to the relator a certificate that he had received the nomination of the Republican party for the office of county commissioner for the County of Penobscot; and to enjoin the issuance to Walter F. Ulmer of a certificate that he had been nominated by that party to that office. The last mentioned prayer, however, is not stated as a ground of complaint in the alternative writ which was issued.

The exceptions in this case have been certified directly to the chief justice under the provisions of R. S. 1930, Chap. 116, Sec. 18. Although the peremptory writ was not issued, this form of procedure has judicial sanction. *Nichols* v. *Dunton,* 113 Me., 282, 93 A., 746; *Lawrence* v. *Richards,* 111 Me., 95, 88 A., 92.

At the primary election, the relator, Herbert W. Leach, and certain other persons who need not be named here, were candidates for the nomination by the Republican party for the office of county commissioner.

After the primary election had been held, the governor and council, pursuant to the provisions of R. S. 1930, Chap. 7, Sec. 16, as amended by the P. L. 1931, Chap. 75, opened, compared, and tabulated the votes which had been returned. From that tabulation it ap-

pears that Walter F. Ulmer received the highest number of votes of the Republican party for nomination for that office, and that the relator received the next highest number.

Subsequently, the governor and council, on a recount of the ballots so far as they related to those cast for the relator and Walter F. Ulmer, acting under the provisions of R. S. 1930, Chap. 7, Sec. 17, supplemented by Sec. 17-A, P. L. 1933, Chap. 217, found and ascertained that Walter F. Ulmer had received the highest and the relator the next highest number of votes cast by the Republican party for the nomination, notwithstanding errors found and corrected.

It is the contention of the relator that on the recount, the governor and council counted sixteen (16) disputed ballots for Walter F. Ulmer which should not have been counted for him; and if they had not been so counted, the relator, and not Walter F. Ulmer, would have received the highest number of lawful votes cast, which would have entitled the relator to a certificate of nomination by the Republican party for that office.

In the petition, as originally presented, the petitioner prayed that the governor and council be commanded to reject and declare invalid such disputed votes and that the same should not be counted for said Walter F. Ulmer, but that prayer, on motion by the petitioner, was stricken out, and the governor and council were not named as parties in the alternative writ, which was issued against the secretary of state only. Therefore, it is unnecessary for us to decide whether the action of the governor and council in determining the result of a primary election and their decision as to candidates receiving the highest number of votes cast, can be reviewed by the court. That question is not before us, for this proceeding as now postured is against the secretary of state only.

The procedure for determining the result of a primary election, and ascertaining the names of candidates of the various parties to be voted for at a state election, is regulated and defined by statute. R. S. 1930, Chap. 7, Sec. 16, as amended by P. L. 1931, Chap. 75, reads as follows:

"The governor and council, by the first Tuesday of July in each year in which a primary election is held hereunder, shall open and compare the votes so returned hereunder, and have

the same tabulated, and forthwith thereafter have forwarded to each candidate a copy of said tabulations of his precinct or district, and may receive testimony on oath to prove that the return from any city, town, or plantation does not agree with the record of the vote of such city, town, or plantation in the number of votes or the names of the persons voted for, and to prove which of them is correct; and the return, when found to be erroneous, may be corrected by the record. No such correction can be made without application within fourteen days after the returns are opened and tabulated, stating the error alleged, nor without reasonable notice thereof given to the person affected by such correction, and during said fourteen days any person voted for may personally, and by or with counsel, examine said returns in the presence of the governor and council, or either of them, or any member of the council, or the secretary of state. The person having the highest number of votes for nomination to any office shall be deemed to have been nominated by his political party for that office, provided that he or she shall have received at least as many votes as would be required to place his or her name on the primary election ballot by petition, and provided further that when a tie shall exist between two or more persons for the same nomination by reason of said two or more persons having at least as many votes as would be required to place his or her name on the primary election ballot by petition, and having an equal and the highest number of votes for nomination by one party to one and the same office, the secretary of state shall give notice to the several persons having the highest and equal number of votes to attend at the office of the secretary of state at a time to be appointed by said secretary, who shall then and there proceed publicly to decide by lot which of the persons so having an equal number of votes shall be declared nominated by his party with like effect as if there had been no such tie. To ascertain what persons have received the highest number of votes, the governor and council shall count and declare for any person all votes appearing by said returns to have been intentionally cast for him, although his name upon the return is mis-

spelled or written with only the initial or initials of his christian name or names, or with wrong initials or otherwise as the case may be; and they may hear testimony upon oath, in relation to such returns, in order to get at the intention of the voters and shall decide accordingly. When a return is defective by reason of any informality, an attested copy of the record may be substituted therefor.

"The secretary of state shall enter in a register of nominations, to be kept by him for the purpose, the nominations for each party so ascertained, and shall forthwith notify by registered mail each person who is so nominated."

And it is provided in R. S, Chap. 7, Sec. 17 that:

"Upon written application filed with the secretary of state within ten days after the returns are opened and tabulated, alleging that the return or record of the vote cast in any town does not correctly state the vote as actually cast in such town, and specifying the offices as to which such errors are believed to have occurred, the secretary of state shall direct such clerk to forward to him forthwith the ballots cast in said town. The governor and council in open meeting shall examine the ballots cast in said town, and returned to the secretary of state, and if such return or record is found to be erroneous the return shall be corrected in accordance with the number of ballots found to have been actually cast in said town; but no such examination of the ballots shall be made without reasonable notice to all candidates upon the ballot for the offices specified in the application as to which such errors are alleged to have occurred, stating when and where such examination will be made and affording such candidates a reasonable opportunity to be present in person or by counsel at such examination and be heard in relation thereto."

By P. L. 1933, Chap. 217, Sec. 17-A is added to the above-quoted section:

"In the examination of ballots upon application as provided in the preceding section and in section 55 of chapter 8, the gov-

ernor and council upon making corrected returns may in their discretion accept such facts as the candidates involved shall agree upon."

It is apparent from the statutes quoted that the secretary of state has no voice in the determination of what votes or ballots shall be counted. That is no part of his duty, and he has no right or authority to reject or count ballots. It is the duty of the governor and council to ascertain the candidates who have received the highest number of votes cast by their respective parties.

One cannot be properly ordered in a mandamus proceeding to perform an act which plain duty does not require him to perform (*Webster* v. *Ballou*, 108 Me., 522, 524, 81 A., 1009), nor can a writ of mandamus be issued commanding the absolute performance of an act which the respondent has no power to perform. *Chapman, Attorney General* v. *Snow et al.*, 135 Me., 134, 190 A., 636. Therefore, the prayer of the petitioner that the secretary of state be compelled to reject and not count certain votes must be denied.

The governor and council, in the discharge of their official duties, having ascertained that Walter F. Ulmer had received the highest number of votes cast at said primary election for nomination by the Republican party for the office of county commissioner, it became the duty of the secretary of state under the statute to make the proper record thereof and to issue to him the certificate or notice of nomination. The secretary of state cannot be required to violate his statutory duty. The function of mandamus is to enforce obedience and not disobedience of the law.

The conclusion reached that mandamus will not lie makes it unnecessary to consider other exceptions reserved.

*Exceptions overruled.*