NEIL L. PARSONS
*vs.*
RICHARD L. CHASSE, ET AL.

Lincoln.    Opinion, November 21, 1963.

*Richard B. Sanborn,* for plaintiff.

*Leon V. Walker, Jr.,* Ass't. Atty. Gen., for defendant.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, MARDEN, JJ.

SULLIVAN, J.    Plaintiff, a physician and surgeon, filed a complaint against the members of the Board of Registration in Medicine. *R. S. c. 66, as amended.* Defendants re-

sponded by filing a motion, asserting a lack of jurisdiction in the Superior Court to review a decision of the Board, which had denied the Plaintiff's petition for reinstatement as a licensed physician and surgeon. *Maine Rules of Civil Procedure, Rule 12(b), (1),* 155 Me. 500. The parties at the hearing upon the motion sought from the Court the subjection of the complaint to the more comprehensive test, whether Plaintiff had stated any claim upon which relief could be granted. *M. R. C. P., Rule 12 (b) (6).* The Justice of the trial court granted Defendants' motion and dismissed Plaintiff's complaint with prejudice.

The complaint is extensive almost to prolixity and in certain important details is neither helpfully informative nor expositive. Therefore in preference to the hazarding of a condensed statement we elect to quote verbatim here the body of the complaint.

"1. The Petitioner-Plaintiff graduated from Tufts Medical School in 1922, was licensed to practice as a physician and surgeon in Maine in 1924, and carried on a very active and respected medical practice in Damariscotta and its region for about 33 years.

"2. On or about the year 1955 a small group of local doctors complained against him before said Board seeking revocation of his license.

"3. On July 12, 1955 the Board, acting upon the recommendation of the Attorney General's department, voted that the matters were not grounds for a revocation of license and that no hearing should be held.

"4. On July 10, 1956 following further pressure from said small group the Board voted that said doctors be informed that the Petitioner had done nothing to warrant revocation.

"5. On March 14, 1957 after further complaint on the same matters from the same group the

Board tabled the complaint in consideration of the Petitioner voluntarily leaving his practice and the state, which he did.

"6.   On May 27, 1957 the Board stated 'it has no charges of any kind pending against him at this time,' that 'he is a licensed practitioner in this State,' and 'is a bright man, well trained, intelligent and very personable.'

"7.   The Petitioner in 1957-1959 attempted to practice in Massachusetts, but was denied access to use of hospital facilities because of action taken by the above local group of doctors.

"8.   Following further pressure to the Board by said group, on July 8, 1958 the Board stated to them that it 'could not revoke his license at the present time inasmuch as we have insufficient evidence under our Law of Revocation.'

"9.   On March 10, 1959 after the renewal of pressure by said doctors the Petitioner, discouraged and under duress, turned in his certificate to the Board, no findings being made.

"10.   As a result said Petitioner has not practiced his profession in Maine for approximately 5 years and has sustained a penalty in the loss of income of about $100,000.

"11.   In June, 1961 said Petitioner contacted the Secretary of the Board with regard to reinstatement and was informed that he had paid sufficient penalty and that if he could secure the consent of the Damariscotta doctors, his certificate would be reinstated.

"12.   The Damariscotta doctors refused to give their consent upon being requested to do so.

"13.   Over 900 residents of the Damariscotta region have filed petitions with the Board requesting that the Petitioner be permitted to practice, they stating they have complete confidence in his ability as a practicing physician and surgeon.

"14. On December 16, 1960 when said Petitioner filed a petition with the Board for a hearing and reinstatement, the Board without giving the Petitioner any hearing tabled the same for several meetings and then after a year of delay denied it without hearing or without giving any reason on January 10, 1962.

"15. On June 12, 1962 when again said Petitioner filed a petition with the Board for reinstatement, the matter was delayed until November 13, 1962, at which time the Board refused to permit the Petitioner to present any witnesses to testify on his behalf, informed him that the Damariscotta doctors still objected to his reinstatement and then on said date denied his petition without giving any reason therefor.

"Said Petitioner is entitled to practice his profession in the State of Maine and actions of the Board in denying his right to practice and in refusing reinstatement are null and void, unreasonable, arbitrary, an abuse of discretion, and contrary to the statute and to due process, for the following reasons:

"1. The alleged charges against the Petitioner do not constitute grounds for suspension or revocation under Ch. 66, Sec. 6 of the Revised Statutes.

"2. Said Petitioner was never served with proper specific charges thereof.

"3. The Board acknowledged and well knew it had no valid charges of any kind pending against him, yet improperly brought pressure to bear to force an alleged 'resignation.'

"4. The alleged 'resignation' on March 10, 1959 was invalid and incomplete as even were it to constitute revocation of the certificate it did not constitute cancellation of the registration, as required by Ch. 66, Sec. 6.

"5. The action of the Board on March 10, 1959 was invalid as the Board's records indicate

the meeting was called without proper notice and the 2/3 vote of the entire Board required by said statute was not obtained.

"6. The alleged 'resignation' was invalid as said statute provides for suspension and revocation, but not for resignation.

"7. Said actions of the Board are invalid as it never enacted proper rules and regulations for the enforcement of its authority and the performance of its duties as required by Ch. 66, Sec. 2, nor followed the same.

"8. Said actions of the Board are invalid as it has always failed and refused to file with the office of the Secretary of State a record of the names and residences of all persons registered by it, as required by Ch. 66, Sec. 5, and there is no valid registration of doctors in the State, for the Petitioner or for anyone, the Petitioner being registered as much as any doctor.

"9. Said actions of the Board are invalid as it has always failed and refused to file annually with the Governor a report containing a full and complete account of all its official acts during the preceding year, as required by Ch. 66, Sec. 5, and its alleged official acts are invalid.

"10. Even if the tabling of the complaint against the Petitioner in 1957 and the 'resignation' in 1959 were valid and even if they constituted a denial of his right to practice his profession, which is herein denied, the loss of the right to practice from then to date constitutes an unjust and unfair penalty and punishment the severity of which is far heavier and is not commensurate with the alleged charges, considering the Petitioner's tremendous financial loss, his wife and five children, and his present age and life expectancy.

"11. The consideration of the Board in leaving the Petitioner's right to practice dependent upon his securing assent of his competitors and particu-

larly a group who have been antagonistic to him for years renders the action of the Board null and void and prevents an impartial decision.

"12. The action of the Board in his 1960 petition for reinstatement in delaying consideration of the same, refusing a hearing, and denying the same without cause or giving reasons is arbitrary and contrary to due process.

"13. The action of the Board on his 1962 petition for reinstatement in refusing him the right to present his own witnesses, in considering improper evidence, and in denying the same without cause or giving reasons is arbitrary and contrary to due process.

"14. The actions of the Board are invalid and arbitrary for various and sundry other reasons.

"WHEREFORE, your Petitioner prays that,

"1. This Court enter its decree that the Petitioner is authorized to practice as a licensed physician and surgeon, both hithertofore and after the date hereof.

"2. That a writ issue from this Court to said Richard L. Chasse, George E. Sullivan, Stephen A. Cobb, J. Paul Nadeau, Martyn A. Vickers and George L. Maltby, commanding them to appear before this Court and show cause, if any they have, why the Petitioner should not have a certificate and registration as a physician and surgeon.

"3. That he may have such other relief as may be reasonable and proper."

The issues trajected here are commemorative of that unmourned era of the demurrer and joinder. Under our sagacious civil rules more definite statement, discovery devices, clarifying amendment, accommodative rapprochement and pretrial exchange probably would have obviated the expenditure of the pains and time here demanded for the determination of a merely liminal problem as to wheth-

er the encompassing complaint in this case, suggestive of a medley of problems and alternatives discloses fairly a claim supportive of litigation.

Certain rules of procedure are regulative for the performance of our abstruse and confused task.

> "- - - - They (the civil rules) shall be construed to secure the just, speedy and inexpensive determination of every action." *Rule 1 M. R. C. P.,* 155 Me. 479.

> "- - - - All pleadings shall be so construed as to do substantial justice." *Rule 8 (f), M. R. C. P.,* 155 Me. 496.

*Maine Civil Practice,* Field and McKusick, P. P. 167, 168, comments with respect to *Rule 12 (b), M. R. C. P.,* 155 Me. 500, in part, as follows:

> "- - - - All well-pleaded material allegations are taken as admitted for the purposes of the motion, but not conclusions of law from the facts alleged.

> "- - - - On a motion to dismiss, pleadings are construed in favor of the pleader. It is not necessary, as in the past, to state all the facts necessary to constitute a good cause of action - - - - The complaint must 'contain - - - a statement - - - *showing* that the pleader is entitled to relief.' This can scarcely mean that dismissal will result only if there is an affirmative showing in his complaint that he cannot recover. What is intended, - - - is that if fair notice of the claim is given, the complaint is not fatally defective because of the failure to allege in non-conclusory form every fact essential to recovery. The 'showing' that the pleader is entitled to relief must be made, but it may be in general terms which would not have survived a demurrer under prior practice. The objective is to avoid wasting time fighting over mere deficiencies of statement, easily corrected in

> any event by amendment, which do not go to the real merits of the claim - - - -"

See, *Blackstone* v. *Rollins,* 157 Me. 85, 96.

The defendants by their motion for dismissal of the complaint expressly challenge only the jurisdiction of the Superior Court to review the decision of the Board. But it is incumbent upon this Court to ascertain also if the plaintiff by a fair construction of his complaint has propounded any provable claim susceptible of any relief sought.

By his complaint in the case at bar the plaintiff does provide elements which may be abstracted from the textual matter to achieve a statement of a claim upon which relief could be granted.

Prayer 1 of the plaintiff's petition inferentially requests a declaratory judgment, *R. S. c. 107,* § *39,* to have determined *"his rights, status or other legal relations"* as *"affected by a statute,"* to wit, *R. S. c. 20-A,* as amended, *C. 66,* as amended. Plaintiff petitions to have his controverted rights, status and legal relations as a licensed physician authoritatively adjudicated.

Plaintiff alleges that he *"under duress turned in his certificate to the Board, no findings being made."* Potentially these allegations are of multiple import without the benefit of fixations from judicious discovery, pretrial or other explication. These averments must be *"construed in favor of the pleader"* and *taken as admitted for the purposes of the motion." Maine Civil Practice,* P. P. 167, 168, *supra.*

For all we are enabled to divine here, *"duress"* as employed could impute common-law duress, *Campbell* v. *Chabot,* 115 Me. 247, 249, or *"duress"* of the less drastic sort recognized in the so-called modern equitable doctrine which this court has had no formal and recent occasion to evaluate or reconsider and as to which we indicate no attitude here.

(Cf. *Fairbanks* v. *Snow,* 145 Mass. 153, 154, 13 N. E. 596, *Restatement of the Law of Contracts,* §§ 492, 493 and comment; *17 C. J. S., Contracts,* § 173 et seq.)

The plaintiff narrates that complaints against him were lodged with the Board by some doctors who exerted *"pressure"* against the plaintiff. No details are supplied as to the gravamen of the complaints or as to the nature of or mode of application of the *"pressure."*

For want of amplification the affirmation that the plaintiff *"turned in"* his physician's certificate and that the Board indulged in no relative consequential or responsive findings neither necessitates nor sufficiently warrants a conclusion that the plaintiff surrendered or resigned his license to practice his profession. We cannot surmise but for the restricted scope of this decision we will resolve the purport of his diction in favor of the plaintiff and concede that the actuality of a surrender or resignation is issuable. Whether the integrants to constitute surrender or resignation in law were concomitant and availing or were wanting in the action when the Doctor *"turned in"* his certificate will require resolution by hearing, considered finding and reduction to declaratory judgment by the trial court.

The clausal appendage, *"no findings being made"* could debatably be deemed to express either that the Board remained passive and did not act or acted but refrained from entering any memorandum or record of its action. Plaintiff does not assert that no formal or informal *vote* was taken by the Board. Not *"findings"* but rather *acceptance* would have been a more apt designation if the plaintiff sought to imply that on March 10, 1959 he under compulsion was surrendering or resigning or temporarily relinquishing his license in suspension. No finding *of fact* need be occasioned or impelled by a voluntarily tendered resignation, surrender or suspension. The plaintiff's language does

not impart a negation that an *order* or *entry* was made by the Board cancelling plaintiff's certificate of registration.

It could be that the plaintiff pursuant to his allegation that he *"turned in his certificate to the Board, no findings being made"* stands prepared to establish by satisfactory proof that his leaving of his certificate with the Board was legally inoperative and inefficacious to effect suspension, surrender or resignation and consequentially that he the plaintiff continues to enjoy the status of a practicing physician with a right to possession of his certificate.

Upon hearing were the reality proved to be that the plaintiff in 1959 of his own volition had *"turned in"* his certificate to the Board in such a manner and under such circumstances that he thereby effectually induced a voluntary suspension of his certificate and registration and that the Board responsively and in compliance had accepted plaintiff's overtures although the Board entered no memorial of the action there could justifiably ensue a court finding of suspension rather than of cancellation of the plaintiff's certificate and registration.

Available evidence might decide the trial court that the incident of March 10, 1959 resulted in a consummated voluntary resignation or surrender of plaintiff's license.

If in conformity with the evidence and law the trial court should permissively conclude that the return of the plaintiff's certificate to the Board in 1959 is voidable because of proximately operative and nullifying coercion or duress exerted upon the plaintiff and if such court should compel avoidance, a declaratory judgment could be rendered confirming plaintiff's right to practice medicine.

Plaintiff by his complaint has supplied fair notice of a claim, justiciable at least, that his conduct on March 10, 1959 was without prejudice to his right to resume the practice of medicine.

The complaint states that by his petition dated June 12, 1962 the plaintiff sought reinstatement. If plaintiff's conduct in *"turning in"* his license on March 10, 1959 eventuated in a perfected surrender, resignation or revocation and cancellation of his professional certificate and license the Board in 1962 had no jurisdiction for plaintiff's reinstatement. R. S. c. 66, § 6, as amended, P. L. 1961, c. 394, § 22; Rule 80 B (a), M. R. C. P., 155 Me. 592. Mandamus would not be accessible for the plaintiff. *Burkett* v. *Secretary of State,* 137 Me. 42, 47.

. If the event of March 10, 1959 effected a suspension of plaintiff's license the Board after September 16, 1961 had no jurisdiction to terminate the suspension. R. S. c. 66, § 6, as amended by P. L. 1961, c. 394, § 22; P. L. 1961, c. 394, § 1. Nor did the hearing officer have the jurisdiction to lift a suspension. R. S. c. 20-A, § 12, P. L. 1961, c. 394, § 1. Mandamus would not lie. *Burkett* v. *Secretary of State, supra.*

If the affair of March 10, 1959 had been of no true significance with respect to plaintiff's license there was no occasion for reinstatement in 1962. If such were the situation plaintiff might have requested of the Board the restoration to him of his certificate or a duplicate thereof and for refusal or neglect have invoked mandamus. *Steves* v. *Robie,* 139 Me. 359, 362; *Baker* v. *Johnson,* 41 Me. 15, 20.

Plaintiff's petition of June 12, 1962 may be logically and legitimately considered an abandonment of his prior petition of December 16, 1960. The petition of 1962 requested a "reinstatement." Plaintiff did not request the Board to make a "declaratory ruling" in respect to his turning in of his license certificate in 1959 although plaintiff could have sought such a ruling. R. S. c. 20-A, § 6, P. L. 1961, c. 394, § 1. This omission of the plaintiff to secure a declaratory ruling now precludes him from successfully seeking man-

damus as to the failure of the Board to have pronounced innocuous the turning in of the certificate in 1959.

> "The writ of *mandamus* is not a writ grantable of right, but by prerogative, and amongst other things it is the absence of a specific legal remedy which gives the court jurisdiction to dispense it. It cannot be granted to give an easier or more expeditious remedy, but only where there is no other remedy, being both legal and specific. Tapping's Mandamus, 18." *Baker* v. *Johnson,* 41 Me. 15, 20.

Suffice it to say, for the purposes of this opinion, that we are not persuaded that the plaintiff could not under fitting circumstances have voluntarily suspended or resigned his certificate or that the failure of the Board to enact rules or regulations or to file records, duplicates or reports with State officials, R. S. c. 66, §§ 2, 5, nullified the Board's doings.

Plaintiff's allegations are sufficient to negate that any lawful hearing was accorded him by the Board in 1962. It is impossible for us to know from the state of the record in this case whether a hearing for reinstatement in 1962 would have been purposeful, unnecessary, or beyond the jurisdiction of the Board.

We conclude that the Plaintiff in general terms has shown by his pleading that he is entitled to a hearing and a declaration of his rights and status, if any he may be found to have, in accordance with the provisions of the *Uniform Declaratory Judgments Act,* R. S. c. 107, § 38, ff.

> *The mandate must be: Appeal sustained; Case remanded to the Superior Court for appropriate consideration in accordance with this opinion.*